UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>BOOZ ALLEN HAMILTON, INC., et al.,<br><br>Defendants. | Case No.: 1:22-cv-01603-CCB |

**DEFENDANTS EVERWATCH CORP., EC DEFENSE HOLDINGS, LLC, AND ANALYSIS, COMPUTING & ENGINEERING SOLUTIONS, INC.'S MEMORANDUM IN SUPPORT OF EMERGENCY <u>MOTION FOR PROTECTIVE ORDER AND SANCTIONS</u>**

This litigation is an unprecedented overreach by the Department of Justice Antitrust Division ("DOJ" or "Division") based on a theory that has no basis in law or economics and is belied by common sense. DOJ has admitted that it has no concerns with the proposed merger of Defendant Booz Allen Hamilton, Inc. ("BAH") with Defendant EverWatch Corp., ("EverWatch") apart from one single issue—a single upcoming bid for the National Security Agency's ("NSA") OPTIMAL DECISION ("OD") program. DOJ contends that the mere existence of a facially conditional Merger Agreement—an over 140 page document with largely uncontroversial provisions, like requiring EverWatch to timely pay its taxes between sign and close, and to operate its business in the ordinary course—has somehow instantaneously changed EverWatch's incentives to bid on OD *even pre-closing while it remains a separate company*, such that the entire Merger Agreement should be abrogated. DOJ Mot. for Prelim. Inj. at 2, ECF No. 29 ("PI Motion"). EverWatch expected the NSA to open the OD bid process months ago, and remains ready to compete vigorously—at arms-length against BAH—for that bid, just as it has competed vigorously for at least one other bid issued by the NSA since the Merger Agreement was signed. Given that

EverWatch cannot know whether the proposed merger will actually close, it has no incentive to do otherwise.

In DOJ's zeal to rush to court and paint the parties in a false and misleading anticompetitive light, it has mischaracterized the facts and ignored EW Defendants'[1] basic procedural rights. The latest in a string of examples of DOJ's overzealous behavior is DOJ's improper public disclosure of EverWatch's documents as part of its July 8, 2022 PI Motion, despite the fact that those documents were produced pursuant to a Civil Investigative Demand ("CID") under the confidentiality protections of the Antitrust Civil Process Act, 15 U.S.C. § 1313(c)(3), and were clearly marked "Highly Confidential." In doing so, DOJ has made a series of errors, which supply the basis for this motion: first, DOJ filed EverWatch's documents publicly without obtaining EverWatch's consent, as the statute requires; second, after being informed of this error, DOJ failed to timely contact the Court to remove the materials from public access after EverWatch raised this issue; and third, DOJ told EverWatch it will not do so during the pendency of this dispute, meaning the the documents remain on the public docket. EverWatch respectfully requests that the Court enter a Protective Order to prevent DOJ from publicly filing (or otherwise publicly disclosing) EverWatch's confidential documents in violation of the Antitrust Civil Process Act in the future. EverWatch also respectfully requests that the Court sanction DOJ, and issue an order (1) requiring DOJ counsel to immediately contact the clerk of court to remove the filing from public access, (2) admonishing DOJ regarding its conduct, and (3) directing DOJ not to publicly disclose EverWatch's confidential materials without following the proper procedures in the Antitrust Civil Process Act and any protective order entered in this case.

---

[1] EverWatch Corp., EC Defense Holdings, LLC, and Analysis, Computing & Engineering Solutions, Inc. (collectively, "EW Defendants").

**I.     BACKGROUND**

EverWatch provides signals intelligence and other cyber security solutions to the U.S. defense and intelligence communities. On March 15, 2022, EverWatch and Defendant EC Defense Holdings, LLC entered into a Stock Purchase Agreement with BAH, pursuant to which BAH would acquire EverWatch for $440 million (the "Transaction"). The Transaction is highly complementary, combining EverWatch's mission-critical classified expertise with BAH's deep artificial intelligence ("AI") and cyber portfolio. BAH anticipates that EverWatch will help expand BAH's capabilities in both intelligence and defense projects. For BAH's National Cyber Platform, EverWatch brings foundational capabilities for intellectual property and intellectual capital and fills platform gaps with respect to cloud & analytics capabilities, Signals Intelligence ("SIGINT") development and deployment as well as institutional familiarity with various SIGINT/Cyber missions. For BAH's National Security Business, EverWatch enhances BAH's existing AI and machine learning capabilities as well as brings on new business models to enable BAH to pursue business opportunities at cost advantages to these end clients. As a result, the parties anticipate that the Transaction will expand services, improve quality, and create more aggressive competition to win more contracts and provide better service.

DOJ has not questioned the Transaction's procompetitive aspects, nor has DOJ questioned the parties' contention that there are at least eight other meaningful competitors that offer interchangeable services. Indeed, a declaration that DOJ itself submitted from Diane Dunshee, Director of Business Management & Acquisition and the Senior Acquisition Executive of the NSA states that there are at least *178 companies* that NSA believed could support the OD procurement and *14 companies* who expressed an interest in being selected as the prime contractor on the procurement. PI Mot. Ex. A ¶ 6, ECF No. 35-1. Nor does DOJ deny that the combined

BAH/EverWatch would create a critical fifth competitor to the incumbent set of Large System Integrators ("LSIs") who have dominated the NSA's Capabilities Directorate[2] for decades.

Instead, DOJ has put forth the novel theory that (1) only competition for the yet-to-be released OD bid matters in assessing the Transaction's overall legality; (2) only EverWatch and BAH are relevant to assessing that single bid (independent of the competitive constraint provided by the possibility of other bidders the NSA has itself identified); and, (3) most bizarrely, that once the parties signed the Merger Agreement, it became impossible for BAH and EverWatch to participate in a competitive bid process on the upcoming OD bid, even while they remain separate companies, who are highly incentivized to compete for and win the bid. Indeed, DOJ has confirmed that it "has no issue with the merger other than the Optimal Decision procurement." Ex. 1 at 1, Email from R. Shores to K. Quin (July 6, 2022, 6:55 AM EST). In short, the parties are ready, willing, and able to continue to do exactly what DOJ has said in every case before this one: compete on the merits in the period between signing a merger agreement and closing their transaction. DOJ Compl.¶ 1, *United States v. Duke Energy Corp.*, 2017 WL 242830, (No. 17-cv-00116) (D.D.C. Jan. 18, 2017), ECF No. 1 ("The HSR Act's notice and waiting period requirements ensure that the parties to a proposed transaction continue to operate independently during review, preventing anticompetitive acquisitions from harming consumers before the government has had the opportunity to review them[.]"). Rather than allow the parties to compete on the OD bid in the ordinary course, the Division has opted to engineer artificial urgency by instituting this litigation and filing a PI Motion based on the mere fact the parties signed a merger

---

[2] The Directorate of Capabilities is a division of the NSA that handles strategy and integration of advanced technology.

agreement. As detailed below, in its haste to gin up this baseless antitrust case, it has failed to observe the protections that the Antitrust Civil Process Act affords to EverWatch's documents.

### A. DOJ's Misrepresentation Of EverWatch's Efforts To Settle With the Government

Under the Hart-Scott-Rodino ("HSR") Act, DOJ has 30 days to review a proposed transaction to determine if it may substantially lessen competition in a relevant antitrust market. 15 U.S.C. § 18a(b)(1)(B). Following this period, DOJ can either (1) do nothing, allowing the transaction to close; (2) sue to block the transaction; or (3) issue a request for an extensive investigation (known as a "Second Request").  As has become an increasingly common practice to avoid protracted and burdensome Second Request investigations that may be unnecessary, parties may also "pull and refile" their HSR filing to start a new 30-day review period.

During the initial review period (which was extended by multiple pull and refiles), Defendants repeatedly attempted to understand DOJ's theory that "the act of signing the merger agreement changed the parties incentives to compete" on a single bid and to explain that this theory was not supported by the facts and did not provide a basis to block the entire deal.  Instead, DOJ informed Defendants they must address the issue to obtain DOJ approval for the deal.  As a result, Defendants sought to constructively engage with DOJ to propose remedies to allay DOJ's concerns with respect to the parties' incentives to compete for the OD bid. The parties did this in good faith because they are eager to close a transaction that is good for the government across multiple potential procurements, and wanted to promptly isolate and address the narrow issue of the OD bid.[3] These proposals—typical in similar cases—included establishing firewalls (which DOJ

---

[3] It is customary for parties seeking clearance of a transaction to propose "remedies" to the DOJ that will ameliorate potential lessening of competition as a result of the proposed merger. Typically

rejected), offering to increase bonuses for employees working on a successful bid to further confirm their incentives were not altered in the pre-closing period (which DOJ rejected), and offering to move EverWatch out of the prime role for the OD bid to allow a third party that was already a member of the bid team, but was not a party to the transaction with BAH, to make all key competitive decisions about the bid. When EverWatch proposed this last solution, with the final days of the waiting period dwindling and with no sign that a Second Request was imminent, DOJ appeared interested in learning more about the proposal.

Given DOJ's initial response, on June 3, 2022, EverWatch presented the proposal for a new OD bid lead to DOJ in writing. Ex. 2, Email from A. Reeves to K. Quin (June 3, 2022). DOJ thanked EverWatch for the proposal and asked specifically for a status report: "[Have] EverWatch and [proposed bid lead] agreed that [proposed bid lead] will take over the prime role, and if so, is there documentation of that agreement? Second has [proposed bid lead] already assumed that role?" DOJ expressed no concerns with the proposed arrangement in its response. Ex. 3 at 1, Email from K. Quin to A. Reeves (June 3, 2022, 6:34 PM EST). EverWatch subsequently provided DOJ with written confirmation of the proposed replacement of EverWatch as the prime, if the bid issued. DOJ again thanked EverWatch and again expressed no concerns with EverWatch's proposed remedy. *Id*.

---

DOJ engages with proposed remedies, advises the parties on adjustments that would make remedies acceptable to DOJ, and memorializes agreed-upon remedies in the form of enforceable consent decrees. *See e.g.*, Final J., *United States v. United Techs. Corp.*, 2020 WL 4810850 (No.20-824) (D.D.C. July 22, 2020), ECF No. 28 (consent decree where DOJ required defendants in military technology sector to divestiture assets to approve merger); *see also* Final J. at 5, *United States v. Gen. Elec. Co*, 2017 WL 6760799, at *3 (No. 17-1146) (D.D.C. Oct. 16, 2017), ECF No. 13 (DOJ requiring General Electric to divest its worldwide water and technologies business in approving its acquisition of Baker Hughes Inc.).

On June 7th, one day before the DOJ's third waiting period was set to expire, DOJ expressed concerns with the proposed remedy, and informed EverWatch that it would be issuing a Second Request and initiating a further investigation of the Transaction. Five days later, in communications on June 12th and June 13th, DOJ further explained that it believed the proposed remedy would worsen competition and asked for immediate assurances that the proposed remedy had not been implemented. EverWatch expressed confusion over whether DOJ was trying to stop a workable remedy that would address DOJ's only professed concern with the transaction. Nevertheless, on June 13th, EverWatch provided confirmation to DOJ in writing that EverWatch had not implemented its proposed remedy. Ex. 4 at 1, Email from A. Reeves to K. Quinn (June 13, 2022, 2:18 PM EST).

On June 15th, DOJ informed the parties that it believed the parties had engaged in improper collusion by proposing the remedy and that the proposed remedy itself violated Section 1 of the Sherman Act. This was surprising in light of EverWatch's June 13th assurances that the remedy had not been implemented and DOJ's failure on multiple occasions to express this concern *before* encouraging EverWatch to proceed with the proposed remedy. That same day, DOJ issued a Second Request to the parties, only one week into the fourth pull-and-refile period. Ex. 5, Letter from R. Danks to A. Reeves (June 15, 2022). On June 17th, DOJ issued EverWatch a CID for documents based on a purported Section 1 investigation (independent of the merger investigation under Section 7 of the Clayton Act and the HSR Act) into an alleged improper agreement with BAH and the proposed replacement bid lead. The CID had a return date of June 23. Ex. 6, CID No. 31063 (June 17, 2022). The DOJ also issued a deposition notice in connection with its Section 1 investigation into the proposed remedy, scheduled for June 30. *Id.*

On June 27th, in an effort to put this issue to rest and given there was nothing to hide, EverWatch produced documents responsive to the CID. Ex. 7 at 7, Email from C. Beller to A. Andresian (June 27, 2022). EverWatch designated its documents "Highly Confidential" and requested confidential treatment of its documents in the cover letter accompanying its production. *Id.* at 1 (noting "[t]he contents of this email are confidential. Please *accord all available protections against disclosure*" (emphasis in original)). Two days later, on June 29th, with its Second Request still pending and no risk of the parties imminently closing their transaction, DOJ filed the instant litigation. Despite being well aware that EverWatch only proposed the arrangement with the potential new bid lead in an effort to resolve DOJ's concerns with the Transaction,[4] and despite encouraging EverWatch to take steps toward implementing the proposal three weeks earlier, DOJ mischaracterized the intent and motives of the parties by publicly alleging that the proposal was "a transparent attempt to evade antitrust scrutiny" and accused EverWatch of engaging in a "shell game." Compl. ¶¶ 56, 58, ECF No. 1.

### B. DOJ's Proposed Protective Order Acknowledges That EverWatch's CID Materials Should Be Protected

On June 29th, DOJ sent Defendants a proposed Protective Order. Ex. 8, Email from C. Montezuma to A. Reeves (June 29, 2022). Among other provisions, DOJ's draft Protective Order specifically provided that:

> Any Investigation Materials that a Defendant previously provided to any Plaintiff during the Investigation that the Defendant designated as Confidential or for which

---

[4] EverWatch's attempts to settle its disputes with the government are exempt from antitrust liability under the *Noerr-Pennington* doctrine, which protects EverWatch's First Amendment right to petition the government. *A.D. Bedell Wholesale Co. v. Philip Morris, Inc.*, 104 F. Supp. 2d 501, 506 (W.D. Pa. 2000), *aff'd*, 263 F.3d 239 (3d Cir. 2001) ("The defendants' activities 'in negotiating the M.S.A with the settling states and achieving a settlement agreement with those states are protected under the *Noerr–Pennington* doctrine as conduct incidental to litigation.'" (quoting *Hise v. Philip Morris Inc.*, 46 F. Supp. 2d 1201, 1260 (N.D. Okla. 1999), *aff'd*, No. 99-5113, 2000 WL 192892 (10th Cir. Feb. 17, 2000)).

the Defendant requested confidential treatment, including but not limited to testimony, documents, electronic documents and data, and materials produced pursuant to the Antitrust Civil Process Act, 15 U.S.C. § 1311-14, or the Hart-Scott-Rodino Antitrust Improvements Act, 15 U.S.C. § 18a, will be treated as containing Confidential Information.

*Id.* ¶ 16. Defendants proposed edits to DOJ's draft on July 6th, but did not propose any changes to the provision maintaining confidential treatment of CID documents. Ex. 12 at 1, Email from T. Stenerson to K. Quin (July 6, 2022, 5:42 PM EST). The parties met and conferred on July 7th regarding the Protective Order, and DOJ indicated that it would send a revised draft to Defendants shortly after that call. As of this filing, DOJ has not done so.[5]

### C. DOJ's Improper Filing Of EverWatch's Materials On The Public Docket And Unwillingness And Purported Inability To Remove Those Materials

Contrary to DOJ's representations in its proposed draft Protective Order that it would treat investigation materials as confidential, DOJ's Motion for Preliminary Injunction attaches two documents marked "Highly Confidential" that EverWatch produced in response to the CID, and quotes directly from the unredacted portions of those materials six separate times. Mem. in Supp. of PI Mot. ("PI Mem.") at 3 n.3, 18 at n. 38 (quoting Ex. B, ECF No. 35-2); *id.* at 3 n.4, 14 n.35, 15 n.36, 25 n.44 (quoting Ex. C, ECF No. 35-3). Upon discovering that DOJ had filed EverWatch's designated materials on the public docket, counsel for EverWatch immediately alerted DOJ and asked DOJ to remove the materials from the docket and file them under seal. Ex. 9, Email chain between A. Rathbun and K. Quin (July 8, 2022).

---

[5] On July 8th, DOJ filed a redacted version of its Motion for a Preliminary Injunction, along with numerous sealed exhibits. In that filing, DOJ falsely represented to the Court in its certificates of service and sealed exhibits on June 29 and July 8 that it had served unsealed copies on Defendants via email. Notice of Filing Under Seal, Certificate of Service, ECF No. 2-2; Notices of Filing Under Seal PI Exs. D – I, K – N, ECF Nos. 29-6 – 11, 13 – 16.

9

Rather than immediately taking action to remove the materials from public view (at least until the parties could resolve any dispute about the issue), DOJ first claimed it did not understand the basis for EverWatch's concern, then claimed that it had no authority to address EverWatch's concern, and finally pointed to the late hour as an excuse to do nothing. *Id.* at 1-3. The next day, DOJ informed EverWatch that it would not remove the materials from public view. Ex. 10 at 1, Email from K. Quin to A. Rathbun (July 9, 2022).

DOJ's refusal to remove the materials – even temporarily – is based on its contention that the Antitrust Civil Process Act allows DOJ to "use" materials obtained pursuant to a CID in litigation. In emails and during a meet and confer on the night of July 8th, counsel for EverWatch repeatedly explained that EverWatch does not dispute that DOJ can *use* EverWatch's CID documents in the litigation, but that the statute requires the DOJ to *file those documents under seal* if it has not first obtained EverWatch's consent to disclose them publicly. 15 USC §1313(c)(3) ("[N]o documentary material . . . so produced shall be available for examination, without the consent of the person who produced such material[.]").  DOJ views this as a distinction without a difference and believes it has the unilateral ability to decide what may be filed publicly.

## II.     ARGUMENT

### A.     The Antitrust Civil Process Act Protects Documents Produced Pursuant To A Civil Investigative Demand From Public Disclosure

It is well settled, both as a matter of case law and decades of real-world practice, that the DOJ may not publicly disclose documents produced pursuant to a CID without the producing party's consent. 15 U.S.C. §1313(c)(3); *see also GAF Corp. v. Eastman Kodak Co.*, 85 F.R.D. 46, 52 (S.D.N.Y. 1979) ("The Antitrust Civil Process Act specifically bars the government from revealing the contents of [the materials] to Kodak without GAF's consent."); *United States v. Alex. Brown & Sons, Inc.*, 169 F.R.D. 532, 543 n.5 (S.D.N.Y. 1996), *aff'd sub nom. United States v.*

*Bleznak*, 153 F.3d 16 (2d Cir. 1998) ("15 U.S.C. §1313(c) expressly prohibits the Government from disclosing [CID materials] without permission from the targets."). This is not a controversial or debatable point—it is apparent on the face of the Antitrust Civil Process Act itself.

The DOJ itself has repeatedly made clear (as it must in light of the plain language of the statute) that the Antitrust Civil Process Act prevents it from publicly disclosing documents produced pursuant to a CID, even when the DOJ is engaged in litigation. *See, e.g.*, *United States v. AT&T, Inc.*, 310 F. Supp. 3d 161, 185 (D.D.C. 2018) (noting DOJ's argument that it could not produce CID materials in litigation because it was "required [under the Antitrust Civil Process Act] to obtain consent from each of the third parties that originally had produced the information in question."); *see also* Christine Varney, Assistant Att'y Gen., Antitrust Div., U.S. Dep't of Just., Addres on Procedural Fairness 2009 WL 2984202, at *4 (Sept. 12, 2009) ("In view of the potential for information leaks to damage legitimate business interests, the Antitrust Division takes very seriously its obligation not to disclose confidential information."); *United States v. Am. Bar Ass'n*, No. 95-1211), Resp. of the United States to Public Comments, 60 Fed Regi. 63,766, 63,777 ("The [Antitrust Civil Process] Act imposes strict disclosure limits on the Government . . . and the Government must comply with them."). While not binding on the Court, the DOJ Antitrust Division Manual also highlights the impropriety of the DOJ's failure to comply with the Antitrust Civil Process Act. The Manual expressly provides:

> If competitively sensitive information is to be used in a pleading, the Division's general policy is to make reasonable efforts to allow the party that produced the material the opportunity to seek a protective order. Alternatively, the Division may voluntarily file the document or portion of the pleading under seal.

Ex. 11, DOJ, Antitrust Division Manual III-66 (5th ed. Jan. 2022). Indeed, the DOJ's decision to redact portions of its brief and Exhibits A-C and J, and file Exhibits D-I, and K-N completely under seal, demonstrates that DOJ was fully aware that its obligations to maintain confidentiality

extend to litigation.[6] Yet DOJ unilaterally decided that EverWatch was not entitled to those protections, and without any advance notice or discussion with EverWatch, DOJ publicly disclosed EverWatch's CID materials.[7]

DOJ compounded its error when it refused to immediately remove the documents from the public docket while the parties discussed their dispute over the applicability of the Antitrust Civil Process Act. Moreover, it appears that Antitrust Division management did not make themselves available to the attorneys conducting the filing, even though those attorneys purported not to have the authority to correct the filing themselves. Ex. 9 at 1, Email from A. Rathbun to K. Quin (July 8, 2022, 10:40 PM EST). Instead, EverWatch's documents remain on the public docket, with increasing potential to cause unwarranted and unjustified reputational harm to the company and its employees.

### B. A Protective Order Is Necessary To Prevent DOJ From Further Public Disclosure Of EverWatch's Documents

Federal Rule of Civil Procedure 26(c)(1) provides that the Court may enter a protective order to "protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed. R. Civ. P. 26 (c)(1). EverWatch's proposed Protective Order easily meets that standard. DOJ's disregard for the Antitrust Civil Process Act, and its apparent inability to correct a filing issue in a timely manner, demonstrate that barring DOJ from further publicly disclosing

---

[6] DOJ did not file a motion to seal the PI Motion or its exhibits, as it was required to do under Local Rule 105.11.

[7] This district recognizes that even if a party disagrees that information has not been properly designated as confidential, that party must still file those materials under seal in the first instance, pending resolution of the dispute by the Court. *See* Stip. Order Regarding Confidentiality of Disc'y Material (L.R. 104.13), App. D, U.S. Dist. Ct. for the Dist. of Md. Local Rules (noting that "even if the filing party believes that the materials subject to the Confidentiality Order are not properly classified as confidential, the filing party shall file the Interim Sealing Motion").

documents EverWatch produced in response to the CID is appropriate and necessary. Nor can DOJ credibly argue otherwise—the text of EverWatch's proposed Order is nearly the same text DOJ proposed on June 29th. Ex. 8, Email from C. Montezuma to A. Reeves (June 29, 2022).

### C. Sanctions Are Appropriate To Maintain The Integrity Of The Judicial Process

This Court has the inherent power to order sanctions "to impose order, respect, decorum, silence, and compliance with lawful mandates." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461 (4th Cir. 1993). DOJ's repeated missteps, even before this litigation has truly begun in earnest, regrettably necessitate immediate intervention from this Court to protect the integrity of these proceedings. This Court has considerable discretion to fashion a sanction to remedy this issue and to impose order on this litigation. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991). Accordingly, EverWatch respectfully submits that this Court should sanction DOJ and issue an order (1) requiring DOJ counsel to immediately contact the clerk of court to remove the filing from public access, (2) admonishing DOJ regarding its conduct, and (3) directing DOJ not to publicly disclose EverWatch's CID materials, or any other materials that EverWatch designates as confidential, without following the proper procedures in the Antitrust Civil Process Act and any protective order entered in this case.

Courts treat the improper disclosure of confidential materials extremely seriously, and such conduct is routinely sanctioned. *See, e.g. SAS Inst. Inc. v. World Programming Ltd.*, No. 10-25, 2014 WL 1760960, at *4 (E.D.N.C. May 1, 2014) (imposing sanctions for violation of protective order). In the Fourth Circuit, even an unintentional violation of a protective order is an appropriate ground for sanctions. *Forrest Creek Assocs., Ltd. v. McLean Sav. & Loan Ass'n*, 831 F.2d 1238, 1245 (4th Cir. 1987). Moreover, DOJ cannot evade sanctions by pointing to the current lack of a protective order in this case. Courts routinely impose sanctions where parties act irresponsibly with

respect to the public dissemination of information, even apart from any protective order. In *American Science and Engineering, Inc. v. Autoclear, LLC*, the court sanctioned a defendant for publicly issuing a press release containing misleading information regarding the litigation. 606 F.Supp. 2d 617, 625 (E.D. Va. 2008). When the plaintiff sent a retraction to defendant for dissemination, defendant refused to issue it, and the release continued to be available to the public. *Id*. The court sanctioned the defendant, notwithstanding the defendant's contention that the misleading statements were an oversight, because "even if the misstatements were unintentional . . . the issuance of a patently misleading press release on a nationally available, widely-read internet site is completely irresponsible." *Id*.

Here, DOJ has acted completely irresponsibly. It ignored the plain terms of 15 U.S.C. § 1313(c), even after EverWatch's counsel specifically raised that provision. It refused to take immediate steps to remove the filing from the public docket while the parties tried to resolve their dispute. The next day, DOJ doubled down on its obvious misreading of the statute and continued to refuse to correct the issue. Ex. 10 at 1, Email from K. Quin to A. Rathbun (July 9, 2022). Such actions are indifferent to the law and demonstrate a reckless disregard for EverWatch's rights under the CID and as a litigant in this Court.

### III. CONCLUSION

EverWatch respectfully requests that the Court grant EverWatch's motion.

| | |
|---|---|
| Dated: July 11, 2022 | */s/ Molly M. Barron* |
| | Molly M. Barron (Bar No. 19151) |
| | Amanda P. Reeves (*pro hac vice* pending) |
| | Marguerite M. Sullivan (admitted *pro hac vice*) |
| | Anna M. Rathbun (admitted *pro hac vice*) |
| | G. Charles Beller (admitted *pro hac vice*) |
| | LATHAM & WATKINS LLP |
| | 555 Eleventh Street, NW, Suite 1000 |
| | Washington, DC 20004 |
| | Telephone: (202) 637-2200 |
| | Facsimile: (202) 637-22001 |
| | molly.barron@lw.com |
| | amanda.reeves@lw.com |
| | marguerite.sullivan@lw.com |
| | anna.rathbun@lw.com |
| | charlie.beller@lw.com |
| | |
| | Alfred C. Pfeiffer Jr. (*pro hac vice* pending) |
| | Kelly S. Fayne (admitted *pro hac vice*) |
| | LATHAM & WATKINS LLP |
| | 505 Montgomery Street, Suite 2000 |
| | San Francisco, CA 94111 |
| | Telephone: (415) 391-0600 |
| | Facsimile: (415) 395-8095 |
| | al.pfeiffer@lw.com |
| | kelly.fayne@lw.com |
| | |
| | *Attorneys for Defendants EverWatch Corporation, EC Defense Holdings, LLC, and Analysis, Computing & Engineering Solutions, Inc.* |

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of Sealed Exhibits 2, 3, 4, 6 and 7 to the foregoing document to be served on July 11, 2022, upon the following in the manner indicated:

| | |
|---|---|
| Ariana Wright Arnold (Bar No. 23000)<br>UNITED STATES ATTORNEY'S OFFICE<br>DISTRICT OF MARYLAND<br>36 S. Charles Street, Fourth Floor<br>Baltimore, MD 21201<br>ariana.arnold@usdoj.gov<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Kevin Quin<br>Jay Owen<br>U.S. DEPARTMENT OF JUSTICE<br>ANTITRUST DIVISION<br>450 Fifth Street, NW, Suite 8700<br>Washington, DC 20530<br>kevin.quin@usdoj.gov<br>jay.owen@usdoj.gov<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Todd M. Stenerson (Bar No. 14194)<br>Ryan Shores (*pro hac vice* pending)<br>Matthew Modell (*pro hac vice* pending)<br>SHEARMAN & STERLING LLP<br>401 9th Street, NW, Suite 800<br>Washington, DC 20004<br>Telephone: (202) 508-8000<br>Facsimile: (202) 508-8100<br>todd.stenerson@shearman.com<br>ryan.shores@shearman.com<br>matt.modell@shearman.com | *VIA ELECTRONIC MAIL* |

Susan Loeb (*pro hac vice* pending)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-4000

Facsimile: (212) 848-7179
*Attorneys for Defendants Booz Allen*
*Hamilton Inc. and Booz Allen Hamilton*
*Holding Corporation*

    */s/ Molly M. Barron*
Molly M. Barron (Bar No. 19151)

3