# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>        v.<br><br>BOOZ ALLEN HAMILTON HOLDING CORP., *et al.*,<br><br>    Defendants. | Civil No.: 1:22-cv-01603-CCB<br><br>Filed: August 15, 2022 |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL INVESTIGATION MATERIALS WITHHELD ON THE BASIS OF PRIVILEGE**

Defendants contend that "unlike other merger cases . . . [the Department of Justice ("DOJ")] has yet to produce its full set of investigation materials to Defendants"[1] and cast various aspersions on DOJ's assertions of privilege. Mot. at 1. Defendants' challenges to the United States' assertions of attorney-client privilege, deliberative-process privilege, or work-product protection run contrary to well-established precedent. The Court should reject Defendants' invitation to invade the government's privileges.

I.   **An Attorney-Client Relationship Exists Between DOJ and NSA**

The National Security Agency ("NSA"), as an agency of the United States, does not act on its own behalf when it procures government contracts, it does so on behalf of the United States. *See U.S. v. Am. Tel. & Tel. Co.*, 461 F. Supp. 1314, 1333 (D.D.C. 1978). In cases such as this, the United States is represented by the Attorney General. *See id.* at 1314. (noting that the Attorney General is "the government's attorney" and "the official responsible for institution and conducting criminal and civil litigation of the United States."). NSA has an attorney-client relationship with the DOJ because the *United States* has this relationship. *See* J. Kanter Decl., Ex. 1 ¶ 6.

The attorney-client privilege manifests when "the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980). Courts infer that communications between the government and its attorneys are privileged when such interests are implicated. *See Judicial Watch v. Dep't of the Army*, 466 F. Supp. 2d 112, 121 (D.D.C. 2006). In this litigation, as discussed *supra*, DOJ is representing the United States, and concomitantly its agencies, to protect the United States' legal interests. When the NSA is harmed by unlawful

---

[1] Defendants have yet to produce a privilege log to Plaintiff.

1

competitive behavior, the United States, through the Assistant Attorney General for the Antitrust Division, and not the NSA, determines whether violations of the antitrust laws have occurred. *See* J. Kanter Decl., Ex. 1 ¶ 1-2.

What Defendants claim is an "unprecedented expansion of the attorney-client . . . privilege[]," courts view as "simply a matter of evenhandedness." *Hunton & Williams v. United States Department of Justice ("Hunton")*, 590 F.3d 272, 278 (4th Cir. 2010). Courts correctly recognize that for the United States to have a "level playing field" with private parties in litigating its claims, the United States must have "the same right to undisclosed legal advice in anticipation of litigation." *Id.* at 278. Accepting Defendants' argument that no attorney-client relationship exists here would create a situation that the Fourth Circuit has rejected as untenable: "[A]ttorneys on one side of litigation [can] freely communicate, safe in the knowledge that their work product and deliberative processes would be privileged, while the other side would be obligated to turn over communications of the very same nature of its adversary." *Id.* at 278-79.

Defendants attempt to gain this unfair advantage under the guise of the "public interest in government transparency." Mot. at 5. But, ironically, it is *Defendants'* position that is contrary to the public interest. Requiring disclosure of the government's communications with its lawyers would likely chill agency discussions and deliberations, significantly hampering the DOJ's ability to properly investigate violations of the law. *See* J. Kanter Decl., Ex. 1 ¶ 12. In the course of investigating and litigating the United States' legal claims, DOJ attorneys and their client agencies would think twice before communicating about those claims should such communications become discoverable. *Id.* Here again, the Fourth Circuit has rejected this problematic scenario. *See Hunton,* 590 F.3d at 278 (noting that such disclosures "would impair an agency's ability to prepare effectively for litigation with private parties").

2

Defendants further contend that "DOJ has not explained how the attorney-client privilege could possibly have applied from the outset of its investigation." Mot. at 4. But the attorney-client privilege "is not limited to communications made in the context of litigation or even a specific dispute." *Coastal States*, 617 F.2d at 862. Once the DOJ determined that the United States' legal interests might be implicated by the Proposed Acquisition, it began to represent the United States, including the NSA, as its attorneys.

Defendants note that the withheld information was "exchanged between DOJ and the only other entity at issue in this case," namely, "the sole customer," and that such information "is highly relevant" and accordingly "must be produced." Mot. 5. Relevance is not the standard for whether otherwise privileged communications must be disclosed. Attorney-client communications and work product can be *highly* relevant to Defendants' case, but the prejudice resulting from their disclosure would "run[] contrary to the principles underlying the adversary process" and accordingly "our adversary system would suffer as a result." *Better Gov't Bureau v. McGraw (In re Allen)*, 106 F.3d 582, 607 (4th Cir. 1997).

## II. The Attorney-Client Privilege Protects Facts Communicated Between DOJ and NSA

Defendants argue that "DOJ has not provided any details to suggest that the purpose of these communications was anything other than to collect facts for use in its own investigation." Mot. at 2. However, "the attorney-client privilege . . . appl[ies] so long as the primary purpose of [a] document was the provision of legal advice." *In re Smith & Nephew Birmingham Hip Resurfacing (NHR) Hip Implant Prods. Liab. Litig.*, No. 1:17-md-2775, 2019 U.S. Dist. LEXIS 91795, at *33 (D. Md. May 31, 2019). The primary purpose of NSA and DOJ's communications was to evaluate the United States' course of action throughout the investigation and litigation of this lawsuit. Defendants have other avenues for seeking the underlying facts—a deposition, for

3

example—without undermining the attorney-client privilege.

### III. Withheld Information is also Protected by the Deliberative-Process Privilege

Defendants also argue that "[g]athering facts from another agency in the course of an investigation [is not] a part of DOJ's or NSA's a deliberative process" and therefore facts learned in the process of DOJ's investigation are not protected by the deliberative-process privilege. Mot. at 2. But the Fourth Circuit has made clear that factual information is protected if it is "intertwined with the policy-making process." *Ethyl Corp. v. United States EPA*, 25 F.3d 1241, 1249 (4th Cir. 1994) (internal citations omitted). NSA did not share facts with the DOJ in a vacuum; it did so to assist DOJ with, *inter alia*, evaluating whether to open an investigation into the Proposed Acquisition, investigating the competitive effects of the Proposed Acquisition, and determining whether filing suit is the most prudent avenue here for securing the United States' legal rights under the antitrust laws. Information shared, however factual, is part and parcel of the United States' deliberations over whether and how to prosecute its legal claims. *See* J. Kanter Decl., Ex. 1 ¶ 9-10.

Also, the communications Defendants seek contain the views and opinions of NSA employees and DOJ attorneys made to help guide the investigation and the decision to challenge the Proposed Acquisition. *Id.* ¶¶ 4-5, 7. In some instances, NSA employees sent emails to DOJ lawyers, which included preliminary unofficial views about the merger. Such communications reflect "the personal opinions of the writer rather than the policy of the agency." *Chang v. Dep't of the Navy*, No. 06-cv-193-RWT, 2006 U.S. Dist. LEXIS 105397, at *10 (D. Md. Nov. 2, 2006); *see also* J. Kanter Decl., Ex. 1, ¶ 10. And because these opinions may differ from the decision ultimately taken by the agency, they may "inaccurately reflect or prematurely disclose the views of the agency." *Chang*, U.S. Dist. LEXIS 105397, at *10; J. Kanter Decl., Ex. 1 ¶ 11.

Accordingly, such communications are protected by the deliberative-process privilege. *Id.* (internal citations omitted).

### IV. The United States Has Correctly Claimed Work-Product Protection

Confusingly, Defendants challenge Plaintiff's work-product assertions on the grounds that "[t]he descriptions of these communications do not indicate they are the work product 'of the attorney done in preparation for litigation.'" Mot. at 5. Each of Plaintiff's privilege log entries asserting work-product protection notes a DOJ attorney's involvement or attorney impressions concerning or informing "the United States' legal claims concerning potential litigation." *See, e.g.*, Defs.' Ex. 5 at USDOJ-TEMP003-00000262. Defendants assail this as "describ[ing] the same kind of investigative information-gathering that DOJ routinely does," Mot. at 5, but the standard for invoking the work-product doctrine is whether "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or *obtained* because of the prospect of litigation." *APL Corp. v. Aetna Casualty & Surety Co.* 91 F.R.D. 10, 15 (D. Md. 1980) (emphasis added). When DOJ opens an investigation into potential antitrust violations, there is "some possibility of litigation," *id.* at 15; *see also* J. Kanter Decl., Ex. 1 ¶ 5; in many instances, materials and facts gathered and obtained during this investigation reveal "the focus of [the] investigation, and hence, [DOJ's] theories and opinions regarding this litigation," *Better Gov't Bureau*, 106 F.3d at 608 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 399 (1983)); J. Kanter Decl., Ex. 1 ¶ 10.

### V. Conclusion

For the foregoing reasons, Plaintiff United States respectfully request that this Court deny Defendants' motion to compel and request for *in camera* review.

Dated this 15th day of August, 2022.

Respectfully submitted,

**FOR PLAINTIFF UNITED STATES OF AMERICA**:

        /s/
JAY D. OWEN (special admission)
KEVIN QUIN (special admission)
ALEXANDER ANDRESIAN (pending special admission)
ALEX COHEN (special admission)
NATALIE HAYES (pending special admission)
MIRANDA ISAACS (pending special admission)
STEVEN KRAMER (pending special admission)
ARIANNA MARKEL (special admission)
JONATHAN MINCER (pending special admission)
BENJAMIN RUDOFSKY (pending special admission)
BRYN WILLIAMS (special admission)
Trial Attorneys
United States Department of Justice
Antitrust Division
Defense, Industrials, and Aerospace Section
450 Fifth Street N.W., Suite 8700
Washington, DC 20530
Telephone: (202) 476-0251
Facsimile: (202) 514-9033
Email: Kevin.Quin@usdoj.gov


ARIANA WRIGHT ARNOLD
USDC Md Bar No. 23000
Assistant United States Attorney
36 S. Charles Street, Fourth Floor
Baltimore, Maryland 21201
Telephone: 410-209-4813
Facsimile: 410-962-2310
Email: Ariana.Arnold@usdoj.gov

## **CERTIFICATE OF SERVICE**

I, Jay Owen, certify that this 15th day of August, 2022, I caused a true and correct copy of the foregoing to be served upon all counsel of record, to include the below, via electronic mail.

Molly M. Barron
Amanda P. Reeves
Marguerite M. Sullivan
Anna M. Rathbun
Christopher J. Brown
G. Charles Beller
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
molly.barron@lw.com
amanda.reeves@lw.com
marguerite.sullivan@lw.com
anna.rathbun@lw.com
chris.brown@lw.com
charlie.beller@lw.com

Alfred C. Pfeiffer Jr.
Kelly S. Fayne
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
al.pfeiffer@lw.com
kelly.fayne@law.com

*Attorneys for Defendants EverWatch Corp., EC Defense Holdings, LLC, and Analysis, Computing & Engineering Solutions, Inc.*

Todd M. Stenerson
Ryan Shores
Matthew Modell
Adam B. Schwartz
Jacob M. Coate
David A. Higbee
SHEARMAN & STERLING LLP
401 9th Street, NW, Suite 800
Washington, DC 20004

todd.stenerson@shearman.com
ryan.shores@shearman.com
matt.modell@shearman.com
adam.schwartz@shearman.com
jacob.coate@shearman.com
david.higbee@shearman.com

Susan Loeb
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
Susan.loeb@shearman.com

*Attorneys for Defendants Booz Allen Hamilton*
*Inc. and Booz Allen Hamilton Holding Corporation*

/s/Jay Owen
Jay Owen (special admission)
*Attorney for the United States*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>    v.<br><br>BOOZ ALLEN HAMILTON HOLDING CORP., *et al*.,<br><br>  Defendants. | Civil No.: |

**[PROPOSED] ORDER DENYING DEFENDANTS' MOTION TO COMPEL INVESTIGATION MATERIALS WITHHELD ON THE BASIS OF PRIVILEGE**

Defendants have moved for this Court to grant Defendants' Motion to Compel Investigation Materials Withheld on the Basis of Privilege. Upon consideration of the pleadings, memoranda, exhibits, and any response thereto:

It is ORDERED that Defendants' Motion to Compel Investigation Materials Withheld on the Basis of Privilege is DENIED to the extent that it would require Plaintiff to produce Investigation Materials that reveal attorney-client communications, attorney work product, and/or the United States' deliberative processes. The Court finds that such Investigation Materials are subject to the attorney-client privilege, attorney-work-product doctrine, and the deliberative-process privilege in the circumstances of this case and that Defendants have not shown that these Investigation Materials are not protected by the foregoing and subject to disclosure.

**SO ORDERED**, this ____ day of August, 2022.

_____
Catherine C. Blake
United States District Judge

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>        v.<br><br>BOOZ ALLEN HAMILTON HOLDING CORP., *et al.*,<br><br>    Defendants. | Civil No.: 1:22-cv-01603-CCB<br>Filed: August 15, 2022 |

## DECLARATION OF JONATHAN KANTER

I, Jonathan Kanter, Assistant Attorney General for the Antitrust Division at the Department of Justice ("DOJ"), declare that the following statements are true and correct to the best of my knowledge and belief, and that they are based on my personal knowledge as well as information provided to me in the ordinary course of my duties.

1. I am employed at DOJ, located at 950 Pennsylvania Avenue, N.W., Washington, D.C. 20530. I was confirmed as Assistant Attorney General for the Antitrust Division by the United States Senate on November 16, 2021. As Assistant Attorney General for the Antitrust Division, I am responsible for overseeing the Antitrust Division and the DOJ's enforcement of the antitrust laws.

2. As Assistant Attorney General, I have been delegated the responsibility by the Attorney General to determine whether to bring antitrust actions on behalf of the United States of America, *see* 28 C.F.R. § 0.40. Moreover, I have been specifically delegated authority to assert applicable privileges in antitrust litigation by the Deputy Attorney General, who is

1

authorized pursuant to DOJ regulations, *see* 28 C.F.R. §§ 16.21 *et seq.,* to determine whether DOJ information will be withheld in response to subpoenas and other demands. The delegation provides that any assertion of privilege be in accordance with the guidelines established in 28 C.F.R. § 16.26.

3. The Hart-Scott-Rodino Antitrust Improvements Act ("HSR Act") requires businesses exceeding certain sizes to report proposed corporate transactions valued above specified thresholds to the DOJ and Federal Trade Commission ("FTC") so that the agencies may consider whether such transactions comport with federal antitrust laws. When the Antitrust Division is concerned that the effect of a proposed transaction "may be substantially to lessen competition, or to tend to create a monopoly," *see* 15 U.S.C. § 18, the Antitrust Division will open an investigation. In my role as Assistant Attorney General, I oversee all such investigations. If I ultimately believe a proposed transaction will violate the antitrust laws, I may decide to file an action in federal court seeking to block the proposed transaction.

4. In the course of Antitrust Division investigations into whether a proposed transaction involving a government contract would violate the antitrust laws, Antitrust Division attorneys will often communicate with other federal agencies with expertise or regulatory jurisdiction over the products and industries at issue in the transaction. These communications help the investigating attorneys better understand the products and industries at issue and determine whether the proposed transaction is likely to violate the antitrust laws.

5. The Antitrust Division's investigation into Booz Allen Hamilton Holding Corp.'s proposed acquisition of EverWatch Corp. (the "Proposed Acquisition") began in March 2022. Before Antitrust Division attorneys officially opened their investigation, Antitrust Division attorneys spoke with representatives of the Department of Defense

("DoD") and National Security Agency ("NSA") to better understand the landscape for government procurements relating to signals intelligence modeling and simulation services and to advise the Antitrust Division, acting on behalf of the legal interests of the United States, on whether the Proposed Acquisition violated the antitrust laws and whether a formal investigation was warranted in light of potential antitrust concerns raised by the Proposed Acquisition. The same relationship between Antitrust Division attorneys, DoD, and NSA continued after the Antitrust Division attorneys opened their investigation and continues to the present.

6. NSA is an intelligence agency under DoD. DoD is an executive department of the United States. The United States, a party to the present case, is represented by DOJ attorneys as counsel. The United States, and concomitantly its agencies and departments, is the "client" of the DOJ.

7. As part of their discussions with DoD and NSA, Mr. Kevin Quin, Mr. Jay Owen, and Ms. Natalie Hayes (collectively, "Antitrust Division Attorneys"), asked DoD and NSA attorneys questions related to the Proposed Acquisition. In response to these questions, I understand that at least four NSA attorneys[1] and Mr. Sivram Prasad, a DoD attorney, provided information to guide the Antitrust Division's investigation into the Proposed Acquisition and assist in strategic decisions relating to potential—now actual—litigation.

8. I have reviewed documents containing the Antitrust Division Attorneys' questions as well as documents containing the responses to the Antitrust Division Attorneys' questions from the NSA attorneys and Mr. Prasad. I concluded that documents containing the

---

[1] Consistent with the NSA's national-security protocols, *see* 50 U.S.C. § 3605, this declaration does not identify the NSA personnel by name.

questions posed by the Antitrust Division Attorneys and/or the responses from the NSA attorneys and Mr. Prasad are pre-decisional, deliberative, and harm will result from their disclosure. Therefore, I assert the deliberative-process privilege for documents containing this material, namely, those so designated in Plaintiff United States' privilege log.

9. The Antitrust Division Attorneys' questions reflect their impressions, opinions, and judgments about issues relevant to the Antitrust Division's investigation of the Proposed Acquisition at the time the questions were posed in March 2022 and throughout the course of the Antitrust Division's investigation. Because the NSA attorneys and Mr. Prasad's responses were drafted to respond to the Antitrust Division Attorneys' questions, they also disclose the Antitrust Division Attorneys' impressions and judgments at the time concerning the Proposed Acquisition. The factual material contained in the Antitrust Division Attorneys' questions was deliberately selected for inclusion by the Antitrust Division Attorneys as facts they viewed as relevant to possible prosecutorial decisions and antitrust enforcement policy. To the extent there are facts contained in the responses from the NSA attorneys and Mr. Prasad, those facts are inextricably intertwined with the Antitrust Division Attorneys' impressions and judgments related to the Proposed Acquisition.

10. The responses from the NSA attorneys and Mr. Prasad do not reflect the policy of either DOJ, NSA, or DoD, but instead reflect the personal opinions and thoughts of agency personnel that were part of an ongoing, deliberative process to determine whether the United States should challenge the Proposed Transaction. To the extent that any such responses are factual in nature, their selection reflects the personal opinions and thoughts of agency personnel as to their relevance to the investigation of the Proposed Acquisition.

11. The Antitrust Division Attorneys' questions and the responses from the NSA

attorneys and Mr. Prasad were created at the beginning of the Antitrust Division's investigation and do not reflect the ultimate reasons the Antitrust Division decided to bring this action to block the Proposed Acquisition. As a result, the disclosure of this written material would provide an incomplete and misleading view of the Antitrust Division's rationale for bringing the present case.

12. Requiring the disclosure of this material would also have a chilling effect on communications between the DOJ and other executive federal agencies, which would make it more difficult for Antitrust Division attorneys to do their jobs in the future. The Antitrust Division regularly benefits from the expertise and experience of our colleagues at other federal agencies, but the disclosure of this material would require Antitrust Division attorneys to be more cautious in their communications with federal employees outside the DOJ going forward. Similarly, employees at other federal agencies would be reticent to share their expertise with Antitrust Division attorneys out of fear that their communications would not remain confidential. More broadly, this would discourage federal employees from coordinating across executive agencies to reach the best outcomes for the federal government as a whole.

13. For the reasons explained above, I assert the deliberative process privilege for documents containing the Antitrust Division Attorneys' questions and/or the responses from NSA and DoD employees so designated in Plaintiff United States' privilege log.

Pursuant to 28 U.S.C. § 1746, and under penalty of perjury, I declare the foregoing is true and correct to the best of my knowledge.

| | |
|---|---|
|   August 15, 2022      <br> Date |   /s/ Jonathan Kanter      <br> Jonathan Kanter <br> Assistant Attorney General for the <br> Antitrust Division <br> United States Department of Justice |