UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

        *Plaintiff*,

vs.

BOOZ ALLEN HAMILTON, INC., *et al.*,

        *Defendants*.

Case No. 1:22-cv-01603-CCB

**DEFENDANTS' MOTION FOR EMERGENCY RELIEF**

**(REDACTED)**

No special set of rules governs civil cases that the Department of Justice ("DOJ") chooses to bring, even when an underlying government agency operates under special rules of confidentiality. It is DOJ's responsibility to factor in the agency's processes when litigating. But DOJ did not do so and is now in an admitted, ongoing, and indefinite violation of the Court's case management order ("CMO"). Fact discovery closed a week ago on August 22, 2022. The preliminary-injunction hearing is barely more than two weeks away. Yet DOJ has not completed its production of documents. In fact, DOJ has indicated to Defendants that it is only about halfway done, Ex. A at 2, and "cannot commit to a date certain by which the remaining documents will be produced," Ex. B. at 1. DOJ also advised that it cannot provide a date certain to provide a privilege log because it will only produce such a log "after production of the outstanding documents is substantially complete." *Id.* at 2 n.2. Additionally, Defendants have learned, through depositions and belated disclosures by DOJ, that the collection, review, and production of data from the National Security Agency ("NSA") has been *ad hoc*, seemingly unreliable, and inconsistent with good practices and the parties' agreements.

DOJ has repeatedly attributed both its slow pace of production and its lack of compliance with customary discovery protocols and the parties' agreements to the national-security needs of NSA. Although that may explain the reasons for DOJ's deficiencies, it does not excuse them. This case was brought by a section of DOJ's Antitrust Division that focuses on cases related to the defense and national-security sectors and DOJ's complaint focuses entirely on NSA's business. Defendants understood that the pace of this litigation required immediate action and, in consultation with their clients, collected documents from anticipated custodians and initiated review. In doing so, Defendants were able to substantially comply with this Court's discovery deadlines and have produced nearly 28,000 documents (14,958 from Booz Allen and 12,818 from

EverWatch). By contrast, DOJ has produced 786 (and only expects to produce 505 more). Of those 786, as far as Defendants can tell,[1] only half of the documents appear to be associated with the witnesses Defendants deposed. *Most* of DOJ's documents will be produced *after* those depositions. It is at best implausible that NSA has only 1,291 documents responsive to Defendants' Requests for Production ("RFPs").

In the few documents DOJ has produced, attachments are missing, metadata has been removed, critical information (like who an email is to and when it was sent) is missing, and redactions have been occasionally so intrusive that not even DOJ's own witness can discern the subject or date of a document. Moreover, at the depositions, Defendants learned that individual NSA witnesses (who are not lawyers) collected their own documents, used search terms other than those agreed upon by the parties, and made their own responsiveness determinations without attorney supervision.

DOJ's deficient productions have substantially prejudiced Defendants. For example, DOJ claims that NSA plans to release the OPTIMAL DECISION request for proposals in "the immediate future." ECF No. 35-1, ¶ 9. Defendants have sought documents supporting this assertion, but DOJ has not produced a single document contemplating a schedule for OPTIMAL DECISION's release after July 2022. Either DOJ has failed to produce information regarding the current schedule for the OPTIMAL DECISION request for proposals, DOJ is withholding these documents on an undisclosed claim of privilege, or no responsive documents exist. Defendants are not able to assess these claims because DOJ has neither completed its document production nor produced a privilege log for these documents.

---

[1] As explained below, DOJ's decision to remove metadata and redact names makes it impossible to accurately determine who the custodian is for many of its documents.

2

DOJ has failed to meet its discovery obligations under this Court's orders, and Defendants have already been irreparably prejudiced. Emergency relief is needed to prevent further prejudice and level the playing field. Defendants seek an emergency order from the Court granting Defendants the following relief:

1. An attorney must submit on behalf of the United States an affidavit describing the search, collection, and review process undertaken for each agreed-upon custodian by September 2, 2022. This affidavit must describe in detail the methodology undertaken and provide a sufficient basis for Defendants to determine that the number of documents produced by DOJ represents all non-privileged, unclassified responsive materials in DOJ's custody and control as agreed to during the parties' discovery negotiations (or alternatively, the Court should order NSA and DOJ to designate a witness for deposition on the government's document collection and review processes);

2. DOJ must complete its productions in response to the RFPs and Interrogatories served thus far by Defendants no later than September 2, 2022;

3. DOJ must serve its privilege and redaction log no later than September 3, 2022;

4. DOJ must make its witnesses available for depositions from September 6 through September 9, 2022.

## BACKGROUND

DOJ filed its complaint on June 29, 2022, claiming that a single NSA procurement opportunity (OPTIMAL DECISION) was supposedly under imminent anticompetitive threat. ECF No. 1. Shortly thereafter, on July 8, DOJ filed an "emergency" motion for preliminary injunction. ECF No. 29. In that motion, DOJ stated that, although it would need limited discovery for the hearing, it was "prepared to litigate this hearing on an extremely expedited time frame." ECF No. 29-1 at 35. And on July 10, DOJ sought an expedited preliminary-injunction briefing schedule and hearing. ECF No. 36. Specifically, DOJ asked that the Court set the PI hearing for August 5, insisting that the "urgency of the issues" justified an immediate hearing and that a ruling on the PI motion was "necessary as soon as possible." *Id.* at 2.

On July 20, the Court set the preliminary-injunction hearing for September 15–16 and ordered fact discovery to run from July 20 through August 22. ECF No. 73. It further ordered that the parties had to make good-faith efforts to complete responsive productions to requests for production within 21 days of their service. *Id.* The Court confirmed the same in a later case-management order. ECF No. 99. DOJ did not give any indication that it could not comply with these deadlines (and, again, had pushed for them to be substantially shorter).

Notably, on July 21, Defendants sought additional time to file their PI response. ECF No. 76. DOJ largely opposed this request, arguing that any delay longer than a week "would prejudice the United States" and "threaten[] the case schedule." ECF No. 77 at 2. Largely, DOJ argued that the delay in briefing would thwart its ability to obtain timely discovery. *Id.* Again, it made no mention of any complications in working with the NSA that might inhibit its ability to meet the deadlines in the CMO. This Court adopted DOJ's position, granting Defendants only a week's extension. ECF No. 78.

DOJ served its first set of RFPs on July 20 and its first set of interrogatories and second set of RFPs on August 1. Defendants served their first set of RFPs on July 22, their first set of interrogatories and second set of RFPs on August 1, and their second set of interrogatories on August 2.

On August 3, after some discussion, the parties agreed to run certain search terms proposed by the other side to identify responsive documents. The same day, DOJ emailed Defendants to let them know that ███████████████████████████████████████████████████, so DOJ would collect all documents from agreed-upon custodians and then run the search terms themselves. Ex. C. ████████████████████████████████████████████████
████████████████████████████████████████████████

4

██████████████████████████████████████████. Ex. D at 181:12–182:5, 183:1–4. Those documents were then sent to DOJ. And during Jack S.'s subsequent deposition, █

████████████████████████████████████████████████████

██████████████████████████████████████ Ex. E at 201:5–14, 205:9–206:3.

During the fact-discovery period that ended on August 22, DOJ produced a total of just 634 documents in response to Defendants' RFPs and Defendants produced 27,776 documents in response to DOJ's RFPs. Defendants produced their privilege logs on August 24. DOJ has yet to produce a privilege log and has refused to provide a date when it will produce such a log.

After the close of discovery, DOJ produced another 152 documents. This prompted Defendants to send a letter to DOJ on August 25, identifying various discovery deficiencies and notifying DOJ that fact discovery was supposed to have closed. Ex. F. DOJ has since confirmed (in letters on August 28 and August 29) that it has not finished its productions, expects to produce another 505 documents, and (as recently as August 29) will not provide any estimate of when DOJ will satisfy its discovery obligations or even guarantee that such productions will be made before the preliminary-injunction hearing. Ex. A at 2; Ex. B at 2. On August 29, shortly before filing this motion, Defendants requested that DOJ consent to an order imposing the remedies sought in this motion and DOJ declined. *Compare* Ex. G at 2 *with* Ex. B at 1.

## ARGUMENT

**I.  DOJ has ignored the Court's deadlines and prejudiced Defendants' ability to prepare for the hearing.**

DOJ filed an emergency preliminary-injunction motion, claiming that it needed relief "as soon as possible," asking this Court to set the hearing for August 5, and telling this Court that,

5

although discovery would be necessary, "the United States [was] prepared to litigate this hearing on an extremely expedited time frame." ECF No. 29-1 at 35. As it turns out, DOJ was not prepared.

The Court set fact discovery to close on August 22, 2022. Defendants have substantially complied with that deadline, collectively producing roughly 28,000 documents. As DOJ concedes, it has missed the deadline. Ex. A at 1–2; Ex. B at 2. It has been a week since the close of fact discovery and DOJ continues to produce documents.[2] Yesterday, DOJ estimated that it is only *halfway* through its production. Ex. A at 2. DOJ has refused to provide an estimate of when it expects to be done. Ex. B at 2. But considering that it took DOJ roughly five weeks to produce the first half of its documents, it seems highly unlikely that DOJ will complete its production before the September 15 hearing. Even if DOJ completed its production before the hearing, left to its own devices, DOJ will not complete its production with enough time for Defendants to review those documents, for Defendants to re-depose DOJ's witnesses, or for Defendants' expert to adjust her report to account for the new information. Notably, DOJ did not tell Defendants that it would be missing the deadline (only acknowledging the failure after repeated letters from Defendants) or ask the Court for an extension.

DOJ's tardiness is particularly prejudicial in this case. At DOJ's urging and on its claim of an "emergency," this Court set an expedited schedule providing only 34 days for fact discovery and only 57 days between the opening of discovery and the hearing.[3] That schedule left no room

---

[2] In fact, DOJ has violated the Court's order in another way too. The Court required the parties to respond to requests for production within 21 days of their issuance. Defendants served their first set of RFPs on July 22. Thus, DOJ's production responsive to those RFPs was due on August 12. Yet, on August 24—*12 days past the deadline*—DOJ produced more documents that they identified as responsive to Defendants' first set of RFPs. Ex. H at 1.

[3] Ironically, DOJ actually wanted a *shorter* timeline for discovery, originally asking this Court to set the hearing for the first week of August. ECF No. 36.

for error. Depositions are already over, expert discovery ends in 9 days, pre-hearing briefs are due in 11 days, and the hearing itself is in 17 days. Without immediate relief from this Court, Defendants will be forced to play the hearing with half a deck while DOJ takes advantage of Defendants' full discovery.

DOJ's failure to comply with the Court's deadlines is inexcusable. Defendants were able to produce 27,776 documents—and third parties, who do not even have a stake in this case, were able to produce 8,112—in the time allotted. In its letters and emails to Defendants, DOJ points to the time needed to conduct a national-security review as part of the reason for its delay. Ex. B at 1–2. DOJ even goes so far as to imply that Defendants are demanding that DOJ compromise national security to meet its discovery obligations. But Defendants merely seek to vindicate their rights to a fair process and are surprised that DOJ did not account for the inherent and obvious time needed to obtain discovery from NSA before it agreed to the discovery timeline. After all, DOJ is the one who chose to bring a case centered around NSA—it should have anticipated and prepared for difficulties in producing NSA documents. And, as discussed below, DOJ's perplexing decisions about which systems to search and when have likely exacerbated any delay inherent in national-security review.

**II.     DOJ's document collection strategy has delayed the production of relevant documents and likely contributed to DOJ's inability to meet this Court's deadlines.**

DOJ appears to have deliberately started with the documents *least* likely to be relevant and needlessly delayed its review of responsive documents, likely because DOJ failed to conduct an appropriate inquiry to determine where discoverable materials are stored. Testimony has established that documents at NSA are kept on both low-side systems (where only unclassified data is kept) and high-side systems (where both unclassified and classified data is kept). DOJ suggested that it started with the low-side and only searched the high-side *after* it finished with the

low-side system. Ex. I at 4. ███

███

███ Ex. E at 198:4–8 (emphasis added). ███

███

███

███ Ex. J at 133:10–134:17.[4] ███

███. Ex. J at 83:13–18.

███

███, it appears that DOJ did not start reviewing the high-side systems until *after* it had completed productions from the low-side system. Ex. I at 4. In fact, it seems that DOJ did not start searching the high side until mid-August. Ex. I at 4. At that point, the fact-discovery period was already 76% complete,[5] and depositions were set to start the next day.[6] Put differently, DOJ's process was staged to uncover as little relevant information as possible—or at least designed to delay the discovery of relevant information until the last minute.

Moreover, DOJ has told Defendants that before any information from the high-side can be produced, it must undergo a *line-by-line* national-security review. Ex. B at 1–2. This is all the more reason that DOJ should have *started* with high-side system collection and review when it filed its

---

[4] ███ x. J at 132:13–133:6.

[5] Discovery ran for 34 days, between July 20 and August 22. It appears DOJ began searching the high-side system 26 days into that period.

[6] Troublingly, even though the high-side system is the relevant system, DOJ suggested in its August 15 letter that it initially was not planning on searching the high-side system *at all*. Ex. I at 4.


complaint on June 29, or at least when it filed its PI motion, and in all cases no later than July 20 (when discovery began in support of DOJ's PI motion).[7]

Separately, even though fact discovery has been closed for a week, DOJ still has not produced a privilege log. Ex. B at 2 n.2. DOJ has indicated it will not produce a privilege log until after it substantially completes its production but again, will not commit to a firm production date either. *See id.* This is particularly problematic for three interlocking reasons. As the three pending motions to compel reflect, there are significant disputes between the parties regarding DOJ's assertion of attorney-client privilege, deliberative-process privilege, and 50 U.S.C. § 3605(a). ECF Nos. 111, 114, 117. Considering the paucity of documents DOJ has produced so far, Defendants can only suspect that large numbers of documents have been withheld on privilege grounds. And the hearing is only three weeks away. Although there is no set deadline for privilege logs, against this backdrop, if Defendants are going to have a chance to meaningfully challenge DOJ's privilege designations, DOJ must produce its privilege log immediately and supplement those logs on an ongoing basis.

### III. DOJ's process for collecting, reviewing, and identifying responsive documents has been unreasonable.

DOJ agreed to run a set of Boolean search strings that Defendants had carefully designed to identify responsive documents. Ex. C. If there was any doubt that this was the arrangement, in responding to Defendants' Second Set of RFPs, DOJ repeatedly stated that it would produce responsive documents "derived from *agreed-upon* search terms." Ex. K at 7–8, 10 ("[T]he United States will produce non-privileged documents to Defendants, subject to the terms of the protective

---

[7] In a recent letter, DOJ suggests it would have been somehow inappropriate for DOJ to begin collecting obviously relevant documents from NSA before discovery began. But DOJ insists that NSA is its client. And it is common for attorneys to begin collecting relevant documents from their own client before filing suit. *See* Fed. R. Civ. P. 11(b)(2)–(3).

order, derived from *agreed-upon search terms* on documents collected from agreed-upon custodians" (emphasis added)).

In an August 3 email, DOJ told Defendants that NSA's systems did not allow for the Boolean searches to which the parties had agreed. Ex. C. So, DOJ indicated that it would instead collect all the custodial data from NSA's witnesses and then run the searches on DOJ's end. *Id.* This representation proved inaccurate, and DOJ never made Defendants aware that it had deviated from the carefully negotiated discovery protocols.

At his deposition, Scott W. testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. D at 181:12–182:5, 183:1–4. And at his deposition, Jack S., a non-lawyer NSA witness, revealed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—even though DOJ has said that NSA's systems do not support such search terms—and that he ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. E at 201:8. He then ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. E at 201:5–14, 205:9–206:3. This process is both inconsistent with DOJ's repeated representations to Defendants and not reasonably calculated to capture responsive documents. *See Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*, No. 16-cv-06370, 2020 WL 2838806 (N.D. Cal. June 1, 2020) ("It is not enough for counsel to provide advice and guidance to a client about how to search for responsive documents, and then not inquire further about whether that advice and guidance were followed."); Fed. R. Civ. P. 26(g).

## IV. DOJ's production to date has been prejudicially deficient.

The woefully inadequate timeline for DOJ's productions and the lack of forthright communication from DOJ regarding its decision to divert from the collection and review processes negotiated with Defendants have resulted in discovery becoming a one-way street. The additional

actions taken by DOJ described below only further demonstrate that DOJ has irreparably prejudiced Defendants' ability to fairly litigate the pending PI motion.

*First,* the overall number of documents that DOJ has said it will produce is implausibly small. So far, DOJ has only produced 786 documents. Yesterday, DOJ indicated that it expects to produce another 505 documents for a total of 1,291. This is compared to *27,776* documents produced by Defendants. In fact, even *third parties* produced *8,112* documents in response to subpoenas. DOJ has alleged that NSA is the sole customer in this case. Further, DOJ has alleged that this case is solely about OPTIMAL DECISION, and NSA determines the timing and content of the OPTIMAL DECISION RFP. Ex. J at 35:19–22. Moreover, NSA has been working on OPTIMAL DECISION for *several years*. Ex. L at 4–5. Put differently, NSA is at least as central to and involved in the subject matter of this case as Defendants. The idea that NSA has *5%* as many responsive documents as Defendants defies belief. Although it is impossible to know with certainty why the count is so low, it is likely that either an overly expansive application of privilege or the haphazard process by which non-lawyers apparently collected their own documents and made their own responsiveness determinations is to blame.

Aside from the overall number of documents, the small number of custodial documents for DOJ's witnesses—which are critical in a deposition—is even more striking. Compare the number of custodial documents Booz Allen produced versus those DOJ produced.

| Booz Allen's Custodial Documents | DOJ's Custodial Documents[8] |
|---|---|
| Allen: 1422 | Scott W.: 174 |
| Calderone: 2295 | Jack S.: 131 |

---

[8] These numbers are estimates because DOJ's decision to strip metadata from the documents and redact individual's names makes it impossible to achieve an accurate count.

| Ellis: 2091 | Kevin Y.: 49 |
|---|---|
| Gosnell: 4093 | John T.: 5[9] |
| Robertson: 2834 | Diane Dunshee: 33 |

*Second,* the timing of DOJ's production has prejudiced Defendants. Even aside from DOJ's violation of the Court's deadlines (discussed above), DOJ's production schedule has largely thwarted Defendants' ability to use those documents at depositions. Most of DOJ's documents were produced *after* the depositions of DOJ's witnesses. When individual witnesses are examined, the picture is more troublesome. The OPTIMAL DECISION contracting officer was arguably the most important NSA witness. Yet, as far as Defendants can tell, over 90% of his documents will have been produced *after* his deposition.

*Third,* DOJ's removal of metadata, application of intrusive redactions, and inexplicable omissions has seriously reduced the usefulness of the few documents DOJ has produced. The below are but a few examples:

- Ex. O contains the other procurement opportunities with NSA—information critical to defining the relevant market. But DOJ has redacted the description for *every* procurement opportunity other than OPTIMAL DECISION.
- Ex. P was so heavily redacted that an NSA witness was unable to recognize the document, the recipients, the date, or testify to its contents. Ex. E at 183:2–15.

---

[9] In their initial disclosures, DOJ identified John T. as having knowledge regarding "the likely anticompetitive effects arising from the Merger Agreement on the OPTIMAL DECISION procurement." Ex. M at A-2. Yet, at his deposition, John T. testified that ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ Ex. N at 102:3–11.

- Ex. Q is an email from NSA on April 7, 2022, purporting to reach out to companies regarding their interest to bid on OPTIMAL DECISION. Because DOJ's case hinges solely on the idea that Booz Allen and EverWatch will be the only bidders, this is a critically relevant communication. But inexplicably, the email has no "to," "cc," or "bcc" line, and because DOJ has stripped the metadata it is impossible for Defendants to determine whether this email was ever sent or, if so, to whom it was sent.
- Ex. R is an email withholding the OPTIMAL DECISION RFP. The timing of the OPTIMAL DECISION RFP is a critical part of this case. Inexplicably, the email has the "date" and "cc" lines stripped out (in addition to the names being redacted).

Defendants also learned that DOJ had not been producing the attachments to emails and other communications. When confronted with this observation, DOJ revealed that it had made the unilateral (and undisclosed) decision to produce the emails first and would be producing the attachments to the email at some later date. Ex. A. Often the documents attached to or associated with an email are critical to understanding the documents' content. By delaying the release of the attachments (and by not telling Defendants about its plan to do so) DOJ seriously hampered Defendants' ability to understand the documents they had received and use those documents during the deposition of DOJ's witnesses.

## CONCLUSION

Defendants undertook significant expense and burden to comply with this Court's orders and their discovery obligations, producing nearly 28,000 documents before the end of fact discovery. DOJ has ignored this Court's orders and its obligations, producing less than 1,000 documents, many of which are unusable, through a process not reasonably designed to identify

responsive documents. Unless this Court orders immediate relief, Defendants will be further prejudiced in their ability to defend themselves at the upcoming hearing.[10]

Thus, Defendants respectfully request that the Court enter the following relief:

1. An attorney must submit on behalf of the United States an affidavit describing the search, collection, and review process undertaken for each agreed-upon custodian by September 2, 2022. This affidavit must describe in detail the methodology undertaken and provide a sufficient basis for Defendants to determine that the number of documents produced by DOJ represents all non-privileged, unclassified responsive materials in DOJ's custody and control as agreed to during the parties' discovery negotiations (or alternatively, the Court should order NSA and DOJ to designate a witness for deposition on the government's document collection and review processes);

2. DOJ must complete its productions in response to the RFPs and Interrogatories served thus far by Defendants no later than September 2, 2022;

3. DOJ must serve its privilege and redaction log no later than September 3, 2022;

4. DOJ must make its witnesses available for depositions from September 6 through September 9, 2022.

Dated: August 29, 2020 /s/ *Todd M. Stenerson*

Todd M. Stenerson (Bar No. 14194)
David A. Higbee (Bar No. 30364)
Ryan A. Shores (admitted *pro hac vice*)
Adam B. Schwartz (Bar No. 30358)
Matt Modell (admitted *pro hac vice*)
Jacob M. Coate (Bar No. 30355)
SHEARMAN & STERLING LLP
401 9th Street, NW, Suite 800
Washington, DC 20004
Telephone: (202) 508-8000
Facsimile: (202) 508-8100
todd.stenerson@shearman.com
david.higbee@shearman.com
ryan.shores@shearman.com
adam.schwartz@shearman.com
matt.modell@shearman.com

---

[10] If DOJ is unable to immediately provide Defendants with the remaining responsive documents, Defendants will be forced to seek additional relief, including adverse inferences, denial of DOJ's preliminary-injunction motion, or outright dismissal of the case.

jacob.coate@shearman.com

Susan Loeb (admitted *pro hac vice*)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022-6069
Telephone: (212) 848-4000
Facsimile: (212) 848-7179
susan.loeb@shearman.com

*Attorneys for Defendants Booz Allen Hamilton Holding Corp. and Booz Allen Hamilton Inc.*

/s/ *G. Charles Beller*

G. Charles Beller (Bar No. 30372)
Molly M. Barron (Bar No. 19151)
Amanda P. Reeves (admitted *pro hac vice*)
Marguerite M. Sullivan (admitted *pro hac vice*)
Anna M. Rathbun (admitted *pro hac vice*)
Christopher J. Brown (admitted *pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-22001
molly.barron@lw.com
amanda.reeves@lw.com
marguerite.sullivan@lw.com
anna.rathbun@lw.com
chris.brown@lw.com
charlie.beller@lw.com

Alfred C. Pfeiffer Jr. (admitted *pro hac vice*)
Kelly S. Fayne (admitted *pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
al.pfeiffer@lw.com
kelly.fayne@lw.com

*Attorneys for Defendants EverWatch Corp., EC Defense Holdings, LLC, and Analysis, Computing & Engineering Solutions, Inc.*

15

**CERTIFICATE OF SERVICE**

I hereby certify that on August 29, 2022, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, and served one copy, by ECF to counsel of record in this matter.

<u>*/s/ Todd M. Stenerson*</u>

Todd M. Stenerson (Bar No. 14194)
Shearman & Sterling LLP
401 9th Street, NW, Suite 800
Washington, DC 20004
Telephone: (202) 508-8000
Facsimile: (202) 508-8100
todd.stenerson@shearman.com