## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

v.

Civil Action No. CCB-22-1603

BOOZ ALLEN HAMILTON INC. *et al.*

## MEMORANDUM and ORDER

Now pending is a motion by Booz Allen Hamilton, Inc. and EverWatch (collectively, the "defendants") to compel the Government to produce "Investigation Materials" withheld based on the Government's assertion of attorney-client privilege, the deliberative process privilege, and the work-product doctrine. (ECF 111.) The motion is fully briefed, and the court heard oral argument on the motion on August 30, 2022.

The court entered a Stipulated Protective Order which required the parties to produce all non-privileged "Investigation Materials" by July 22, 2022. (ECF 71, at ¶ 44.)[1] The Government produced some qualifying documents but withheld over 200 others, claiming—initially—that the documents were protected by attorney-client privilege. (ECF 112-1, July 27 Privilege Log, at 2-19.) Only two weeks later, however, the Government provided a new privilege log. The new log invokes the deliberative process privilege over many of the documents once claimed to be protected by attorney-client privilege. (ECF 111-1, August 9 Privilege Log, at 21-31.) The

---

[1] "'Investigation Material' means documents, testimony, or other materials that, prior to the filing of this Action, (a) any non-Party provided to any Party, either voluntarily or under compulsory process, in connection with the Investigation; (b) any Party provided to any non-Party relating to the Investigation; (c) the Department of Justice provided to any federal governmental agency relating to the Investigation; (d) any federal governmental agency provided to the Department of Justice relating to the Investigation; or (e) any Defendant, or affiliated person or entity, provided to the Plaintiff relating to the Investigation." (ECF 71, at ¶ 7.)

Government also asserts that the work-product doctrine, in combination with the attorney-client privilege, protects certain documents as well. The court addresses each of these claims in turn.

## I. Deliberative Process Privilege

"To fall within the deliberative process privilege, materials must bear on the formulation or exercise of agency policy-oriented judgment." *Ethyl Corp v. U.S. E.P.A.*, 25 F.3d 1241, 1248 (4th Cir. 1994) (citations omitted). "Documents are 'predecisional' if they were generated before the agency's final decision on the matter, and they are 'deliberative' if they were prepared to help the agency formulate its position." *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 786 (2021).

Here, the Government apparently relies on two separate bases for asserting the deliberative process privilege. The DOJ primarily invokes *its own* deliberative process privilege to the extent the requested documents reflect the DOJ's decision to file this lawsuit. That is, the information exchanged between DOJ and NSA personnel is inseparable from the DOJ's internal debates about whether and how to litigate violations of antitrust laws. And in raising the NSA's deliberative process privilege as to RFP dates at a deposition, the Government argued the defendants seek information that would prematurely disclose the policy views of the NSA. During the hearing, however, the Government said it would not invoke the NSA's deliberative process privilege as to the schedule and parameters of the OPTIMAL DECISION RFP at the reopened depositions.[2]

The court need not explore the validity of either theory at this time. Assuming without deciding the Government has the right to assert the privilege for the investigation leading up to its litigation decision, the defendants have shown a compelling need for disclosure of some, but not

---

[2] Presumably the Government will apply this position to requested documents as well.

all, of the withheld documents.[3] The deliberative process privilege, after all, is not absolute. A court may order disclosure after balancing "the public interest in nondisclosure with the need for the information as evidence." *See Cipollone v. Liggett Grp. Inc.*, Nos. 86-1198, 86-1223, 1987 WL 36515, at *2 (4th Cir. Feb. 13, 1987) (per curiam) (citations omitted).[4] "In striking this balance," the court must consider "(1) the relevance of the evidence to the lawsuit; (2) the availability of alternative evidence on the same matters; (3) the government's role (if any) in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Id.* (citations and internal punctuation omitted); *see also Nat'l Ass'n for Advancement of Colored People v. Bureau of Census*, 401 F. Supp. 3d 608, 617 (D. Md. 2019). The court will address each factor in turn.

First, the Investigation Materials are relevant. The requested documents evidently include communications between the NSA and DOJ about the "landscape for government procurements relating to signals intelligence modeling and simulation services." (*See* ECF 111-2, Kanter Decl., at ¶ 5.) The Government may have to define the "relevant market" to prevail in this case, so information about the *landscape* of this industry is highly probative of "the area of effective competition." *See Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2285 (2018). And any details about the Proposed Acquisition's potential to harm the NSA are especially important because the NSA is the only customer in the Government's proposed market.

Second, the breakneck speed of this litigation has diminished the availability of alternative sources for this information. To be sure, the defendants had the opportunity—which they evidently took—to ask NSA employees questions about their views on the signals intelligence industry and

---

[3] These same documents, however, may have overlapping attorney-client privilege issues.

[4] Unpublished opinions are cited for the soundness of their reasoning, not for any precedential value.

the Proposed Acquisition. But a deposition's usefulness may be limited in this context without the requested documents. Imagine, for example, the Investigation Materials contain an NSA employee's detailed timeline of the planned OPTIMAL DECISION RFP. The same NSA employee, sitting in a deposition, may not remember the precise details of a multi-point, complex bidding schedule absent a document for reference.

Third, the "government's role in the case" counsels in favor of disclosure. *See NAACP*, 401 F. Supp. 3d at 618. Where the government is a party to a case, it has a "more central role in the litigation" which "weighs in favor of disclosure." *Id.* Here, the Department of Justice is not just a party but the plaintiff, which weakens the strength of its privilege claim. *See F.D.I.C. v. Hatziyannis*, 180 F.R.D. 292, 293 (D. Md. 1998) (citing *EEOC v. Citizens Bank & Trust Co.*, 117 F.R.D. 366, 366 (D. Md. 1987) ("[W]hen the Government seeks affirmative relief, it is fundamentally unfair to allow it to evade discovery of materials that a private plaintiff would have to turn over.").

The fourth factor, however, cuts both ways. Whether disclosure would "hinder frank and independent discussion" in the NSA or other agencies turns on the type of documents produced. *See Cipollone*, 1987 WL 36515, at *2. Currently, the court has little information about the scope, content, or tone of the withheld correspondence. Whether disclosure would chill the full and frank deliberations of agency officials remains unclear. Accordingly, the court will attempt to distinguish between the sort of Investigation Materials where disclosure would tend to hinder employee candor and those that would not.

On one end of the spectrum, Investigation Materials containing facts untethered from an employee's "subjective, personal thoughts on a subject" must be disclosed.[5] *See Coastal States*

---

[5] Unless a different claim of privilege is shown to be applicable.

*Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 869 (D.C. Cir. 1980). Because these types of

documents are unmoored from any given employee's personal views, disclosure "will not subject

the writer either to ridicule or criticism." *Id.*[6] An example of purely factual information might be

dates related to the OPTIMAL DECISION RFP. *See id.* ("We can see no possibility whatsoever

that an attorney performing this job would be less "frank" or "honest" if he or she knew that the

document might be made known to the public; there is little to be frank or honest about when

explaining on *what date a transaction occurs* under [regulations].") (emphasis added).

Investigation Materials with "'frank' and 'candid' comments that might be embarrassing

if revealed to the public" lie at the other end of the spectrum. *See NAACP*, 401 F. Supp. 3d at 617.

For example, comments connected to an author's subjective views about the general desirability

of the Proposed Acquisition may be withheld. To be more specific, an email from an NSA

employee saying "I think this merger would be bad for the NSA" may be withheld because the

statement is simply a candid comment about one person's conclusory view of the Proposed

Acquisition. And advice from NSA counsel about the merits of the contemplated lawsuit would

fall under the category of documents that need not be disclosed. On the other hand, an email from

an NSA employee stating, "the RFP is currently scheduled for X day" must be produced.[7]

## II.    Attorney-Client Privilege

---

[6] Other courts have rejected the "fact/opinion" dichotomy. *See, e.g.*, *Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987) ("Courts soon came to realize, however, that use of the factual matter/deliberative matter distinction produced incorrect outcomes in a small number of cases.") But those courts generally analyzed the issue under the first step of the privilege inquiry; that is, in determining whether the privilege applies at all. This court does not express an opinion as to the *applicability* of the deliberative process privilege. Rather, the court uses the "fact/opinion" distinction as a general guidepost in determining which materials, on balance, may be properly withheld based on the risk of chilling agency deliberations.

[7] Of course, there remains a wide gulf between these two extremes. In between may be financial documents, statements from an employee supported by facts about likely harm to the NSA, or about benefits anticipated from the merger. With this general framework, the court hopes counsel may fill in the gaps. In addition, representative documents may be submitted for *in camera* review if needed.

The Government initially claimed attorney-client privilege protected the great majority of the documents against disclosure because the NSA is the DOJ's client. The Government, however, changed the basis for many of its privilege designations between its first and second privilege log. It appears from the hearing too that the Government draws a line between the DOJ's initial inquiries with the NSA, where the DOJ first played the role of an investigator, and the time when the DOJ decided to file the present lawsuit, where the DOJ clearly "became counsel" to the NSA.

Drawing this loose temporal distinction is consistent with the court's view. Assuming an attorney-client relationship existed between the NSA and the DOJ, *see New York Times Co. v. U.S. Dep't of Just.*, 282 F. Supp. 3d 234, 239 (D.D.C. 2017), confidential communications become privileged when "made in order to obtain legal assistance." *In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 338 (4th Cir. 2005). To the extent the DOJ was simply exploring the factual background behind the Proposed Acquisition, its correspondence with the NSA may not be protected by attorney-client privilege. *See Coastal States*, 617 F.2d at 863 (rejecting application of attorney-client privilege where agency counsel did not "counsel" the agency in drafting "neutral, objective analyses of agency regulations").

## III. Work Product Doctrine

The work product doctrine protects the work of the attorney done in preparation for litigation. "Fact work product can be discovered upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." *In re Grand Jury Proceedings, Thursday Special Grand Jury Sept. Term, 1991*, 33 F.3d 342, 348 (4th Cir. 1994) (citations omitted). "Opinion work product is even more scrupulously protected as it represents the actual thoughts and impressions of the attorney, and the protection can be claimed by the client or the attorney." *Id.*

As described *supra*, the defendants have established a substantial need and inability to secure equivalent factual information by alternate means. The defendants do not seek opinion work product, and do not challenge redactions of attorneys' mental impressions. *See Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 509 F.2d 730, 736 (4th Cir. 1974) ("[T]he district court may, providing the other prerequisites for discovery have been met, excise from such documents the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative, and order the balance of the documents to be produced.").

***

With this guidance, the court expects the Government to determine whether additional documents should be produced and to prepare a revised privilege log by September 2, 2022, if possible and in any event no later than Noon on September 6, 2022. In the interim, counsel for the defendants may submit representative documents if necessary for *in camera* review.

Accordingly, as set forth above, the motion to compel is granted in part, denied in part, and reserved in part.

So Ordered this 31st day of August, 2022.

_____
Catherine C. Blake
United States District Judge