# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　Plaintiff,<br><br>　　　　　v.<br><br>BOOZ ALLEN HAMILTON HOLDING CORPORATION, *et al.*,<br><br>　　　Defendants. | Case No. 1:22-cv-01603-CCB<br>Filed: August 31, 2022 |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR EMERGENCY RELIEF

Defendants' motion is yet another attempt to shift attention away from their anticompetitive merger to monopoly and instead put the United States' good-faith efforts to respond to Defendants' burdensome discovery requests on trial before the PI hearing. As noted during the argument on the Motions to Compel on August 30, the United States has repeatedly engaged with Defendants on this issue—including several letters back and forth over the past weekend.[1] The United States has committed to producing documents proportional to the needs of the case and sufficient for Defendants to present their claimed defenses at the upcoming PI hearing. Despite this engagement, when the United States refused to accede to Defendants' draconian proposal[2], Defendants filed their instant motion on Monday shortly before midnight, and then proceeded to feature that motion prominently at Tuesday morning's oral argument less than 10 hours later, disregarding both the letter and spirit of Local Rule 105.2(b).[3] As described in more detail below, Defendants have suffered no prejudice to the preparation of their defense and, even if they had, the commitments already made by the United States are sufficient to remedy it before the hearing. Defendants' Motion for Emergency Relief should thus be denied in its entirety.

---

[1] *See* Defendants' Exhibits A and B, as well as United States Exhibit A, which Defendants inexplicably omitted from the exhibits accompanying their filing on Monday evening, despite its clear relevance to their motion.

[2] *See* Defendants' Exhibit G and ECF No. 133-1.

[3] "In no event, unless otherwise ordered by the Court, is any memorandum to be filed after 4:00 p.m. on the afternoon before the last business day preceding the day on which the proceeding to which the memorandum relates is to be held. For example, a memorandum relating to a proceeding to be held on a Monday must be filed by 4:00 p.m. the previous Thursday."

### I. Defendants' discovery-related claims are an attempt to distract from the issues at the crux of this litigation

Defendants make vague claims of prejudice as a result of the United States' production, but they identify no specific harms suffered. It is obvious why: the documents from NSA are at best tangential to the core issues in this litigation—namely Defendants' dampened incentives to compete resulting from their Merger Agreement—especially in light of the testimony of Defendants' own employees, who have testified consistently with the United States' theory of this case. Contrary to Defendants' unspecified claims of prejudice, Booz Allen's employees have testified (1) that the OPTIMAL DECISION market surveys ███████████████ ███████████████████████; (2) the Booz Allen team that had been working to win the OPTIMAL DEICSION contract is the same as the team that works on MASON III now and that team has ███████████████████████████████; and (3) EverWatch, which had been the only known challenger to Booz Allen's incumbency when the merger agreement was signed, is well aware that ███████████████████████████ ███████████████████████████████████████████████ ███████████████████████.

Indeed, rather than cast doubt on United States' concerns, the evidence gathered so far has only confirmed the government's concerns about the merger agreement and its likely effects.

---



4 ███████████████████████████████████████████████

For example, on March 16, 2022, the day that the merger was formally announced, ▮▮, the Booz Allen Capture Manager for OPTIMAL DECISION emailed a former colleague and current NSA employee at her personal email address with the news. ▮▮ wrote: ▮▮.⁵ Two weeks later, on March 31, 2022, ▮▮, the Booz Allen Proposal Manager for OPTIMAL DECISION, asked ▮▮ ▮▮ of OPTIMAL DECISION and ▮▮.⁶ ▮▮ responded that ▮▮ and ▮▮ ▮▮.⁷ In other words, ▮▮ recognized that the merger agreement diminished EverWatch's incentive to compete against Booz Allen for OPTIMAL DECISION and, therefore, diminished Booz Allen's need to try hard to win OPTIMAL DECISION.

Rather than confront the merits of the case, Defendants now seek to draw attention away from the documents and witness testimony, *much of which supports the United States' position*, by suggesting that the government has not produced documents essential to their defense. In effect, Defendants seek to put the United States' discovery efforts on trial despite the United

---

⁵ United States Exhibit B (BAH_DOJ_00033314).

⁶ United States Exhibit C (BAH_DOJ_00047426).

⁷ United States Exhibits D-F (BAH_DOJ_00047500; BAH_DOJ_00047315; BAH_DOJ_00047333).

3

States' continual efforts to address each concern raised by Defendants, and seek to deflect examination of their merger by offering a hollow settlement proposal during the hearing on the motions to compel.[8]

## II. The United States' search was not unreasonable

The United States has conducted a reasonable search for responsive documents in this litigation that was proportionate to the needs of this case. After Defendants identified five custodians, the United States worked with counsel for NSA and DoD to ensure that a search[9] and collection was done for each of those custodians, including emails, personal drives, shared drives, and other locations that were likely to contain responsive materials. The searches were designed with with an eye towards the most expansive view of Defendants' Requests for Production. The searches were overseen by litigation counsel for NSA with appropriate security clearances[10], and DOJ and NSA litigation counsel conferred multiple times per week to discuss

---

[8] This Proposed Consent Order does not begin to address the fundamental alignment of incentives created by the merger agreement, and, in fact, would cement the very harm the United States seeks to avoid here by guaranteeing that the merger will be consummated before the competition for OPTIMAL DECISION. In other words, the proposal is not a genuine settlement offer, but is a litigation position adopted by Defendants, a view confirmed by the fact that Defendants began asking Deponents about the terms of the Proposed Consent Order within days of delivering it to the United States on August 10. *See* Dunshee Tr. 204:4-205:15 (August 18, 2022).

[9] Defendants cite an August 3 email from the United States (Defendants' Exhibit C) for the proposition that the United States agreed to collect "all" documents from the five custodians, and now profess surprise that the United States followed the exact process outlined in email correspondence exchanged with them on August 3 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (emphasis added). Defendants' interpretation of the United States' email is inconsistent with its plain language. Throughout the discovery process, the United States has been transparent about the challenges of document collection within a classified environment and is surprised that Defendants' seemingly willful blindness to these previously identified challenges has emerged at this late date.

[10] A similar process was conducted with DoD counsel to produce John Tenaglia's responsive materials.

the document collection, including the types of documents collected, the sources searched for those documents, and additional steps necessary to complete document production.

As a result of these efforts, NSA custodians undertook a supervised search to collect responsive documents directly from their email inboxes, hard drives, and other document repositories likely to contain responsive materials. NSA litigation counsel, both directly and through NSA employees, also collected documents from shared drives and hardcopy files.

In an effort to produce documents to Defendants as quickly as possible, the United States produced all potentially relevant documents, *not just those that hit on the Defendants' proposed Boolean searches*. Rather than reducing or otherwise thwarting Defendant's discovery, this approach ensured that Defendants would receive all responsive documents that NSA collected, not just those that hit on search terms.

### III. The United States' production is not deficient

The United States' concedes that its production is still ongoing, and is working in good faith to complete that production. Nineteen NSA attorneys have contributed to this effort over the past several weeks, and NSA is redoubling its efforts to complete production in advance of Defendants' requested deadline of September 2, with additional attorneys joining the review effort. While the United States cannot commit to a certain date for NSA to complete the critical national-security review involved in this production—which includes a line-by-line review of each email and attachment for classification and state secrets, followed by a second "fresh eyes" review—it is making every effort to do so as quickly as possible. The United States is also simultaneously preparing a privilege log that it will make best efforts to produce within one business day of completing production of documents.

Despite the ongoing nature of this difficult task, representations made by the United States regarding the parameters of discovery, and multiple offers to provide more details about

specific documents, Defendants predict that the production and other options presented by the government will not be sufficient. Defendants' stated arguments are entirely based on supposition, and do not support that position:

- Volume of Production: It is not surprising that the United States' production is smaller than Defendants, even substantially so. Both Booz Allen and EverWatch executives testified that their companies have spent substantial sums assembling teams and preparing to bid on OPTIMAL DECISION over multiple years. Booz Allen and EverWatch also planned and executed a Merger Agreement and repeatedly considered the OPTIMAL DECISION RFP as part of the due diligence during the merger agreement and, following the Merger Agreement, their employees extensively discussed the impact of the agreement on OPTIMAL DECISION.[11] In addition, for most NSA custodians, the OPTIMAL DECISION RFP is only one part of their far-reaching (and highly classified) job responsibilities.[12]

- Timing: Although Defendants claim prejudice from the timing of the productions with respect to the depositions, the United States has already offered to reopen the depositions of NSA employees after the remaining NSA documents have been produced for the purpose of allowing Defendants to ask questions related to documents produced after the original deposition date.[13]

---

[11] *See* United States Exhibits B though E.

[12] Further, as Defendants acknowledge, John Tenaglia testified that he was not involved in OPTIMAL DECISION. It is thus unsurprising that there were few documents responsive to Defendants' requests for production, which overwhelmingly concerned OPTIMAL DECISION.

[13] *See* Defendants' Exhibit A. As explained at the August 30, 2022 Motion Hearing (ECF No. 134), the United States also will not object to additional questioning of Jack S. and Scott W.

- <u>Withheld Metadata:</u> As the United States has repeatedly explained to Defendants, NSA's production protocols necessarily remove metadata from materials and are necessary to preserve national security. As the United States has done before, it repeats its offer to consider any document that raises questions for Defendants and, to the best of its ability, address any questions Defendants have about particular documents.

## **CONCLUSION**

The United States remains committed to providing Defendants with a fulsome response to their RFPs and commits to Defendants and the Court that it will do so as quickly as national security allows. These efforts are ongoing and the United States is making every effort to complete them by September 2. These efforts are sufficient to address any remaining concerns Defendants may have, and Defendants' Emergency Motion should be denied in its entirety.

---

related to current deliberations concerning the soon-to-be released final RFP in this action, to address Defendants' arguments that such information is necessary to mount their defense.

Dated this 31st day of August, 2022.

Respectfully submitted,

**FOR PLAINTIFF UNITED STATES OF AMERICA**:

_____/s/_____
Jay D. Owen

KEVIN QUIN (special admission)
JAY D. OWEN (special admission)
ALEXANDER ANDRESIAN (special admission)
ALEX COHEN (special admission)
MARTHA FITZGERALD (special admission)
KERRIE FREEBORN (special admission)
BRIAN HANNA (special admission)
NATALIE HAYES (special admission)
MIRANDA ISAACS (special admission)
STEVEN KRAMER (special admission)
ARIANNA MARKEL (special admission)
JONATHAN MINCER (special admission)
BENJAMIN RUDOFSKY (special admission)
BRYN WILLIAMS (special admission)
Trial Attorneys
United States Department of Justice
Antitrust Division
Defense, Industrials, and Aerospace Section
450 Fifth Street N.W., Suite 8700
Washington, DC 20530
Telephone: (202) 476-0251
Facsimile: (202) 514-9033
Email: Kevin.Quin@usdoj.gov


ARIANA WRIGHT ARNOLD
USDC Md Bar No. 23000
Assistant United States Attorney
36 S. Charles Street, Fourth Floor
Baltimore, Maryland 21201
Telephone: 410-209-4813
Facsimile: 410-962-2310
Email: Ariana.Arnold@usdoj.gov

## **CERTIFICATE OF SERVICE**

      I hereby certify that on August 31, 2022, I electronically filed the foregoing Plaintiff's Memorandum in Opposition to Defendants' Emergency Motion with the Clerk of Court using the CM/ECF system, and served, via electronic filing, counsel of record for all parties.

                                      ___/s/_____

Jay D. Owen (special admission)
Trial Attorney
United States Department of Justice
Antitrust Division
Defense, Industrials, and Aerospace Section
450 Fifth Street N.W., Suite 8700
Washington, DC 20530
Telephone: (202) 476-0251
Facsimile: (202) 514-9033
Email: Jay.Owen@usdoj.gov