IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>BOOZ ALLEN HAMILTON INC., *et al.* | Civil Action No. CCB-22-1603 |

**MEMORANDUM**

In March 2022, Booz Allen Hamilton[1] signed an agreement to acquire EverWatch,[2] a company in the defense intelligence and support services industry. The United States Department of Justice Antitrust Division ("the Government") became troubled by the acquisition because the once-separate companies were both competing for OPTIMAL DECISION—a contract where the winner would provide modeling simulation and signals intelligence services to the National Security Agency ("NSA"). So the Government moved for a preliminary injunction to pause Booz Allen's acquisition of EverWatch, alleging the transaction violated antitrust laws by reducing each company's incentive to compete for the OPTIMAL DECISION contract.

The court denied the Government's motion on October 11, 2022, (ECF 223, Sealed Mem.; ECF 227, Unsealed Mem.), but the Government again moved for injunctive relief just three days later, (ECF 226, Government's Mot. for Fourteen-Day Injunction). The Government's most recent motion seeks: (1) a fourteen-day injunction prohibiting the defendants from closing their

---

[1] "Booz Allen Hamilton" refers collectively to the corporate entities known as "Booz Allen Hamilton Holding Corp." and "Booz Allen Hamilton Inc."

[2] "EverWatch" refers collectively to the corporate entities known as "Everwatch Corp.," "EC Defense Holdings, LLC," and "Analysis, Computing & Engineering Solutions, Inc." As of October 14, 2022, EverWatch is now a wholly owned subsidiary of Booz Allen.

transaction; (2) an order directing the defendants to hold all assets separate if the transaction has closed; and (3) an order extending either form of relief for the duration of the appeals process if the Government decides to appeal. (ECF 226-2, Proposed Order.)

For the reasons below, the court will deny the Government's motion.

## I.  LEGAL STANDARD

Rule 62(c) provides that "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction . . . ." Fed. R. Civ. P. 62(c). Four factors guide the court's consideration of whether to grant an injunction pending appeal: (1) whether the applicant has made a strong showing that they are likely to succeed on the merits; (2) whether the applicant faces irreparable injury absent an injunction; (3) whether an injunction will substantially injure the other party; and (4) the public interest. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970).

## II.  DISCUSSION

**A.  The Government's Requests for Relief are Largely Moot.**

Under Article III of the Constitution, a "case" or "controversy" must exist throughout all stages of federal litigation. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). "[M]ootness goes to the heart of the Article III jurisdiction of the courts." *Castendet-Lewis v. Sessions*, 855 F.3d 253, 260 (4th Cir. 2017) (quoting *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002)). A request for an injunction to prohibit an act is "rendered moot by the happening of the act." *See Ry. Lab. Executives Ass'n v. Chesapeake W. Ry.*, 915 F.2d 116, 118 (4th Cir. 1990) (citations

omitted); *see also Winston v. Fed. Bureau of Prisons*, No. 10-HC-2192-FL, 2011 WL 3664416, at *2 (E.D.N.C. Aug. 18, 2011).[3]

Here, the Government once again asks this court to pause Booz Allen's acquisition of EverWatch. But that ship has sailed. In denying the Government's initial attempt to stop the transaction, the court allowed the defendants to "merge on their own terms, if they so choose." (ECF 227 at 27.) With the court's greenlight, the defendants closed the deal the morning of October 14, 2022. *See* 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2904 (3d ed. 2022) ("If the district court has denied an injunction and there has been no stay, [the] defendant is free to take the action sought to be enjoined, and if the event sought to be enjoined transpires before the appeal is heard, the appeal will be dismissed as moot."). The Government filed its motion *after* the deal closed, so its request to stop the acquisition is moot. *See Ry. Lab. Executives Ass'n*, 915 F.2d at 118.

What remains, then, is the Government's request for an order directing the defendants to "hold all assets separate." (ECF 226-1 at 2.) The consummated acquisition may have mooted this request as well. But the court cannot evaluate whether this request is moot because of the Government's lack of clarity. The Government does not describe what a "hold separate" process would entail, or how the court could enforce a "hold separate" order with Booz Allen having *already* acquired EverWatch. Even if the request for a "hold separate" order is justiciable, the Government's opacity in requesting this remedy gives the court an independent reason to deny the motion. While the Government dresses its motion under the authority of Rule 62(d), the requirements of Rule 65(d) apply to this court with no less force: "*Every order* granting an

---

[3] Unpublished cases are cited only for the persuasiveness of their reasoning, not for any precedential value.

3

injunction must "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required." *See* Fed. R. Civ. P. 65(d)(1)(B)-(C) (emphasis added). Because the Government has failed to specify how Booz Allen could hold EverWatch's assets separate post-acquisition, the court cannot grant the Government relief. *See Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) ("[T]he specificity provisions of Rule 65(d) are no mere technical requirements.").

## B. The Government is Not Likely to Succeed on the Merits of its Appeal.

The court has already held the Government is unlikely to prevail on the merits of its case. (*See* ECF 227 at 25 ("On this record, the Government has not shown it is likely to prevail on the merits.")) True, the "likelihood of success on appeal" standard "does not require the trial court to change its mind or conclude that its determination on the merits was erroneous." *St. Agnes Hosp. of City of Baltimore, Inc. v. Riddick*, 751 F. Supp. 75, 76 (D. Md. 1990). Still, the Government has not made a minimum showing that it has a substantial case on appeal. *See Par Pharms., Inc. v. TWI Pharms., Inc.*, No. CIV. CCB-11-2466, 2014 WL 3956024, at *2 (D. Md. Aug. 12, 2014) ("At a minimum, [the movant] must demonstrate a substantial case.").

To start, the Government faces an uphill battle against a deferential standard of review for many of the court's findings. The court's determination of the relevant product market and the acquisition's effect on competition are factual issues reviewed for clear error. *See United States v. Carilion Health Sys.*, 892 F.2d 1042 (4th Cir. 1989) (unpublished table decision); *see also Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 339 (4th Cir. 2021) ("We review a district court's denial of a preliminary injunction for abuse of discretion, reviewing factual findings for clear error and legal conclusions de novo."). The Government's challenge to the court's decision is not persuasive.

First, the Government makes much of the court's finding that Booz Allen and EverWatch will likely be the only bidders for OPTIMAL DECISION. According to the Government, this fact is enough for OPTIMAL DECISION to constitute a product market. But the Government's proposed market remains too narrow. A relevant market includes products "reasonably interchangeable by consumers for the same purpose[]." *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956). The market for modeling and simulation services extends far beyond the NSA; in fact, computer networks all over the United States rely on such services every day. (ECF 227 at 24.) A market definition cannot rely on a single customer (the NSA) applying a broad tool (modeling and simulation services) to one network system (signals intelligence) at a single point in time (the final weeks just before the bidding deadline). (*See id.* at 18–19.) This market definition is convenient for litigation, but "casts sound economics aside" under the guise of "stag[ing] a one-on-one showdown." *It's My Party, Inc. v. LiveNation, Inc.*, 811 F.3d 676, 683 (4th Cir. 2016) (rejecting a market definition based on "line-drawing" to suit the "needs of the plaintiff").

Second, the Government also contends it is entitled to a structural presumption of anticompetitive effect simply because Booz Allen and EverWatch are the only likely bidders for OPTIMAL DECISION. But the Government's inability to define a relevant market defeats this argument. A proper market definition is a "necessary predicate" to examining the competitive effects of a horizontal merger. *Brown Shoe Co. v. United States*, 370 U.S. 294, 335 (1962). Without a market definition "there is no way to measure [a transaction's] ability to lessen or destroy competition." *See Ohio v. American Express Co.*, 138 S. Ct. 2274, 2285 (2018) (quoting *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 177 (1965)). Accordingly, the Government is unlikely to prevail on the merits of its appeal.

### C. The Government Cannot Satisfy the Other Elements Necessary for an Injunction Pending Appeal.

The court need not address the Government's argument related to irreparable injury; the balance of equities and the public interest justify denying the Government's pending request for relief. Siding with the Government would impose an extreme remedy to address speculative concerns. Without further clarification, the court will assume a "hold separate" order would require unwinding the already-consummated transaction. Such a remedy amounts to a mandatory injunction because it does not "preserve the status quo." *See Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980). District courts may issue mandatory injunctions only in extraordinary circumstances. *Id.* ("The authority of the district court judge to issue a preliminary injunction, especially a mandatory one should be sparingly exercised. Mandatory preliminary injunctions do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demand such relief."). Sorting assets post-acquisition may prove particularly challenging. The proverbial attempt to "unscramble the eggs" is not so easy. *See Consol. Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252, 261 (2d Cir. 1989) (quoting *Sonesta Int'l Hotels Corp. v. Wellington Assocs.*, 483 F.2d 247, 250 (2d Cir. 1973)) ("[O]nce the tender offer has been consummated it becomes difficult, and sometimes virtually impossible, for a court to 'unscramble the eggs.'").

The Government's requested relief would inject more uncertainty to address a fleeting problem. Uncertainty comes at a cost, especially in the rush to finalize OPTIMAL DECISION bids. Bids will be submitted in the near future. (*See* ECF 230, Notice of Bidding Schedule.) And with those finalized bids, the window for *any* potential anticompetitive effect will be closed. Neither the NSA nor the Government have any concern with Booz Allen's acquisition beyond

OPTIMAL DECISION. Entering the Government's request for relief would significantly harm the defendants while offering little to the public interest.

### III. CONCLUSION

For the reasons stated here, the Government's Motion for a Fourteen Day Injunction will be Denied. A separate Order follows.

    10/31/2022                                                                 /s/
Date                                                                        Catherine C. Blake
                                                                           United States District Judge